Mark S. Cheffo (*pro hac vice*)
markcheffo@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:     (212) 849-7000
Facsimile:     (212) 849-7100

Karin Kramer (SBN 87346)
karinkramer@quinnemanuel.com
Leeron Morad (SBN 284771)
leeronmorad@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for Defendant Pfizer Inc.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| LAURA A. PLUMLEE, an individual, on behalf of herself and all other persons similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>PFIZER, INC., a New York Corporation,<br><br>    Defendant. | Case No. 13-CV-0414-LHK<br><br>**DEFENDANT PFIZER INC.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Judge:    Hon. Lucy H. Koh<br>Date:     February 6, 2014<br>Time:     1:30 p.m.<br>Location: Courtroom 8, 4th Floor, United States Courthouse, 280 South First Street, San Jose, CA 95113 |

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ............................................................................. 1

STATEMENT OF ISSUES.............................................................................................. 1

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS................................................................................................ 4

STANDARD ................................................................................................................... 6

ARGUMENT .................................................................................................................. 6

I.      PLAINTIFF'S CLAIMS UNDER THE UCL, CLRA, AND FAL ARE BARRED
        BY THE SAFE HARBOR DOCTRINE .................................................................. 6

II.     PLAINTIFF'S CLAIMS ARE PREEMPTED............................................................ 9

        A.      Claims Challenging The FDA Approval Process Are Preempted ...................... 9

        B.      Any Claim That Pfizer Should Have Changed the Label Post-Approval Is
                Preempted ................................................................................................... 11

        C.      Plaintiff's Challenge to Pfizer's Zoloft Marketing Consistent with its FDA-
                Approved Label Is Preempted........................................................................ 14

III.    PRIMARY JURISDICTION OVER PLAINTIFF'S CLAIMS LIES WITH THE
        FDA ................................................................................................................... 16

IV.     THE COURT SHOULD DISMISS COUNT I (FOR DECLARATORY AND
        INJUNCTIVE RELIEF)........................................................................................ 19

        A.      Plaintiff Cannot Bring A Stand-Alone Claim for Equitable Relief ................... 19

        B.      Plaintiff Has No Standing To Seek Equitable Relief ...................................... 20

V.      PLAINTIFF'S CLAIMS ARE TIME-BARRED.................................................... 21

VI.     PLAINTIFF'S CLRA DAMAGES CLAIM (COUNT II) MUST BE DISMISSED
        FOR FAILURE TO SATISFY THE REQUIREMENT OF PRE-SUIT NOTICE............ 23

CONCLUSION ............................................................................................................ 24

DEFENDANT PFIZER INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Johnson*,
    355 F.3d 1179 (9th Cir. 2004) ............................................................................6

*Alvarez v. Chevron Corp.*,
    656 F.3d 925 (9th Cir. 2011) ..........................................................................7, 8

*Aryeh v. Canon Bus. Solutions, Inc.*,
    55 Cal. 4th 1185 (2013) ..................................................................................21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..........................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..........................................................................................6

*Bernhardt v. Pfizer, Inc.*,
    No. 00-4379, 2000 WL 1738645 (S.D.N.Y. Nov. 22, 2000) .........................17

*In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*,
    2006 U.S. Dist. LEXIS 95500 (N.D. Cal. Aug. 16, 2006) .......................15, 16

*Brazil v. Dole Food Co., Inc.*,
    No. 12-1831, 2013 U.S. Dist. LEXIS 42026 (N.D. Cal. Mar. 25, 2013) .......17

*Buckman Co. v. Plaintiffs' Legal Committee*,
    531 U.S. 341 (2001) ............................................................................2, 9, 10, 11

*Castagnola v. Hewlett-Packard Co.*,
    No. 11-5772, 2012 WL 2159385 (N.D. Cal. June 13, 2012) .........................21

*Cattie v. Wal-Mart Stores, Inc.*,
    504 F. Supp. 2d 939 (S.D. Cal. 2007) ...........................................................24

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) .......................................................................................6

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ....................................................................................20, 21

*Clark v. Actavis Group HF*,
    567 F. Supp. 2d 711 (D.N.J. 2008) ...........................................................17, 18

*Clark v. Time Warner Cable*,
    523 F.3d 1110 (9th Cir. 2008) ........................................................................16

*Davis v. Chase Bank U.S.A., N.A.*,
    650 F. Supp. 2d 1073 (C.D. Cal. 2009) .........................................................24

-ii-

*Davis v. HSBC Bank*,
   691 F.3d 1152 (9th Cir. 2012)..................................................................................6

*Deitz v. Comcast Corp.*,
   No. 06-06352, 2006 WL 3782902 (N.D. Cal. Dec. 21, 2006)..............................24

*Delarosa v. Boiron, Inc.*,
   No. 10-1569, 2012 WL 8716658 (C.D. Cal. Dec. 28, 2012)...............................21

*Fayer v. Vaughn*,
   649 F.3d 1061 (9th Cir. 2011)..................................................................................6

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal. 4th 797 (2005)............................................................................................22

*Gest v. Bradbury*,
   443 F.3d 1177 (9th Cir. 2006)................................................................................20

*Hamilton Materials, Inc. v. Dow Chem. Corp.*,
   494 F.3d 1203 (9th Cir. 2007)................................................................................23

*Heller v. The Coca-Cola Co.*,
   646 N.Y.S.2d 524 (1996)........................................................................................18

*Henderson v. Gruma Corp.*,
   No. 10-4173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011)................................21

*Hodgers-Durgin v. de la Vina*,
   199 F.3d 1037 (9th Cir. 1999)................................................................................21

*Janda v. T-Mobile, USA, Inc.*,
   No. 05-3729, 2008 WL 4847116 (N.D. Cal. Nov. 7, 2008)..................................24

*Lopez v. Nissan North America, Inc.*,
   201 Cal. App. 4th 572 (2011)...................................................................................7

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)................................................................................................20

*Mason v. Nature's Innovation, Inc.*,
   No. 12-3019, 2013 WL 1969957 (S.D. Cal. May 13, 2013)................................21

*Mayfield v. United States*,
   599 F.3d 964 (9th Cir. 2010)..................................................................................20

*Mazza v. American Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012)..................................................................................20

*McCready v. American Honda Motor Co., Inc.*,
   No. 05-5247, 2006 U.S. Dist. LEXIS 44137 (N.D. Cal. June 19, 2006) ..............22

*McGlinchy v. Shell Chem. Co.*,
   845 F.2d 802 (9th Cir. 1988)....................................................................................6

DEFENDANT PFIZER INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS

*Motus v. Pfizer Inc.*,
    127 F. Supp. 2d 1085 (C.D. Cal. 2000).................................................................13

*Mutual Pharmaceutical Co. v. Bartlett*,
    133 S. Ct. 2466 (2013) ...........................................................................................2, 9

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ..................................................................................................20

*Outboard Marine Corp. v. Superior Court*,
    52 Cal. App. 3d 30 (1975) .......................................................................................24

*PLIVA, Inc. v. Mensing*,
    131 S. Ct. 2567 (2011) .....................................................................................2, 9, 12

*In re Paxil Litig.*,
    218 F.R.D. 242 (C.D. Cal. 2003) .............................................................................17

*Perez v. Nidek Co., Ltd.*,
    711 F.3d 1109 (9th Cir. 2013).................................................................................11

*Physicians Comm. for Responsible Med. v. Gen. Mills, Inc.*,
    2006 U.S. Dist. LEXIS 87047 (E.D. Va. Nov. 30, 2006) .......................................18

*Pom Wonderful LLC v. Coca Cola Co.*,
    No. 08-6237, 2013 WL 543361 (C.D. Cal. Feb. 13, 2013) .......................................8

*In re PPA Cases*,
    Case No. JCP-4116 (Los Angeles Sup. Ct. Aug. 23, 2002).......................................8

*Prohias v. Pfizer, Inc.*,
    490 F. Supp. 2d 1228 (S.D. Fla. 2007).....................................................................15

*Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*,
    344 U.S. 237 (1952) ..................................................................................................20

*Ros v. Deutsche Bank Nat'l Trust Co.*,
    No. 12-1929, 2013 U.S. Dist. LEXIS 91495 (S.D. Cal. June 27, 2013) ...................19

*Sanderson Farms, Inc. v. Tyson Foods, Inc.*,
    549 F. Supp. 2d 708 (D. Md. 2008) .........................................................................15

*Soliman v. Philip Morris, Inc.*,
    311 F.3d 966 (9th Cir. 2002)....................................................................................22

*Staacke v. U.S. Sec'y of Labor*,
    841 F.2d 278 (9th Cir. 1988)....................................................................................20

*Stearns v. Select Comfort Retail Corp.*,
    No. 08-2746, 2009 WL 1635931 (N.D. Cal. June 5, 2009) ......................................24

*Sullivan v. JP Morgan Chase Bank, NA*,
    725 F. Supp. 2d 1087 (E.D. Cal. 2010).....................................................................19

*Syntek Semiconductor Co. v. Microchip Tech., Inc.*,
  307 F.3d 775 (9th Cir. 2002) ........................................................................................17

*Univ. Gardens Apts. Jt. Venture v. Johnson*,
  419 F. Supp. 2d 733 (D. Md. 2006) ..............................................................................20

*Vaccarino v. Midland Nat. Life Ins. Co.*,
  No. 11-05858, 2012 WL 1247137 (C.D. Cal. Apr. 13, 2012) ......................................22

*Wang v. OCA Tech. Group, Inc.*,
  276 F.R.D. 618 (N.D. Cal. 2011) ..................................................................................21

*Weinberger v. Bentex Pharmaceuticals, Inc.*,
  412 U.S. 645 (1973) ......................................................................................................18

*Weisbuch v. Cnty. of Los Angeles*,
  119 F.3d 778 (9th Cir. 1997) ........................................................................................23

*Wyeth v. Levine*,
  555 U.S. 555 (2009) ........................................................................................11, 12, 13

## Statutes & Regulations

21 C.F.R. § 7.40 ........................................................................................................................17

21 C.F.R. § 105 ...........................................................................................................................7

21 C.F.R. § 201.57 ..................................................................................................................5, 13

21 C.F.R. § 202.1 .......................................................................................................................14

21 C.F.R. § 314.124 .....................................................................................................................8

21 C.F.R. § 314.125 ..................................................................................................................4, 7

21 C.F.R. § 314.126 .....................................................................................................................4

21 C.F.R. § 314.150 ...................................................................................................................17

21 C.F.R. § 314.70 .................................................................................................................5, 12

21 U.S.C. § 301 ..........................................................................................................................15

21 U.S.C. §§ 332-334 .................................................................................................................15

Cal. Bus. & Prof. Code § 17208 ...............................................................................................22

Cal. Civ. Code § 1782 ...............................................................................................................23

Cal Civ. Code § 1783 .................................................................................................................22

Cal. Code Civ. Proc. § 338 ........................................................................................................22

Fed. R. Civ. P. 12(c) ....................................................................................................................6

**Other Publications**

FDA, CDER Guidance for Industry: Changes to an Approved NDA or ANDA (April, 2004), available at www.fda.gov/OHRMS/DOCKETS/98fr/1999d-0529-gdl0003.pdf........................13

OPDP Mission Statement, http://www.fda.gov/AboutFDA/CentersOffices/OfficeofMedicalProductsandTobacco/CDER/ucm090142.htm .........................................................................................................7

DEFENDANT PFIZER INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on February 6, 2014, at 1:30 p.m. or as soon thereafter as the matter may be heard in the courtroom of the Honorable Lucy H. Koh of the above-entitled Court, 280 South First Street, San Jose, California, Defendant Pfizer Inc. ("Pfizer") shall move, and does move, the Court for an Order granting judgment on the pleadings in its favor against Plaintiff under Fed. R. Civ. P. 12(c). Pfizer's Motion seeks an order that Plaintiff has not plausibly alleged any claims for relief. This Motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, and all records and files in this action, and additional matters of which the Court may take judicial notice.

## STATEMENT OF ISSUES

1. Are the California consumer claims (Counts II, III, and IV) barred by the safe harbor doctrine?

2. Are the asserted claims impliedly preempted?

3. Are the asserted claims barred by the doctrine of primary jurisdiction?

4. Must Count I for declaratory and injunctive relief be dismissed because it is not anchored to any substantive claim for relief?

5. Does Plaintiff have standing to seek equitable relief in Count I?

6. Are Plaintiff's claims time-barred?

7. Must the CLRA claim be dismissed for failure to satisfy the pre-suit requirements?

## PRELIMINARY STATEMENT

Defendant Pfizer seeks dismissal with prejudice of Plaintiff Laura Plumlee's claims against Pfizer for selling Zoloft as an effective treatment for major depression—exactly the purpose for which it was approved by the Food and Drug Administration ("FDA"). Physicians have been prescribing Zoloft for this condition for over two decades. Plaintiff used Zoloft or its generic equivalent for three years. More than four years after she stopped using the medicine, Plaintiff filed this lawsuit, challenging its efficacy. She seeks monetary relief for herself and a California class. She also seeks declaratory and injunctive relief for a nationwide class, which, if granted, would deprive countless patients suffering from major depression of access to their FDA-approved medicine.

This is not a typical products liability case where a plaintiff claims she has been injured because a manufacturer did not warn of a known risk. Ms. Plumlee here seeks only economic damages, contending that Zoloft (which belongs to a class of drugs known as "SSRIs") is no more effective than a sugar pill as a treatment for major depression and, therefore, it never should have been approved by the FDA. She wants her money back because she claims Zoloft did not work for her. She does not allege that Pfizer withheld information from the FDA or that Pfizer marketed Zoloft in a way that was contrary to its approved indication. Instead, she contends that the studies the FDA considered when it approved Zoloft were insufficient to support the FDA's decision to approve it. In other words, fundamental to all of Plaintiff's claims is her contention that the FDA got it wrong. Plaintiff's efforts to use state consumer protection laws to second-guess the FDA's approval of Zoloft must be rejected for several reasons.

First, Plaintiff's claims are barred under California's "safe harbor" doctrine. "Safe harbor" mandates that those who engage in conduct expressly permitted by a state or federal law or regulation may not be subject to suit under California's consumer statutes for engaging in that same conduct. The FDA authorized Pfizer to sell Zoloft as a treatment for depression and with the same label Pfizer has used. Pfizer cannot be held liable under state law for doing precisely and only what the FDA authorized it to do.

Second, Plaintiff's claims are preempted by federal law. The gravamen of Plaintiff's Complaint is that the FDA improvidently approved Zoloft as an effective treatment for major depression because of improprieties in the approval process. Plaintiff's state law claims are in direct conflict with federal law vesting the FDA with authority to approve prescription medicines and cannot survive in light of the preemption principles set out by the Supreme Court in *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001); *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011); and *Mutual Pharmaceutical Co. v. Bartlett*, 133 S. Ct. 2466 (2013).

Third, Plaintiff's claims are also barred by the doctrine of primary jurisdiction. Because the FDA does not approve prescription drugs to be marketed as placebos, her claim that Zoloft is no more effective than placebo is effectively a claim that it should not have been sold at all. Determinations of whether a drug should be approved for a specified use implicate scientific and

1  medical judgment and require a broad public health perspective that only the FDA – which has

2  been studying SSRIs for decades – can bring to bear.  The Court therefore should conclude that

3  primary jurisdiction to decide whether Zoloft is effective to treat depression resides with the FDA.

4  Plaintiff's claims fail for other reasons as well.  Plaintiff's stand-alone claim for

5  declaratory and injunctive relief cannot survive because it is not tied to any substantive claim for

6  relief; declarations and injunctions are remedies, not claims, and there is no basis to issue those

7  remedies without some actionable misconduct as the foundation.  Further, because Plaintiff no

8  longer uses Zoloft, an injunction or declaration would provide no benefit to her personally, and

9  she therefore lacks Article III standing to pursue those remedies.

10  Plaintiff's claims are also barred by the applicable statutes of limitations.  Despite the fact

11  that the basis for Plaintiff's lawsuit is that Zoloft was ineffective, she used it under a doctor's care

12  for three years, far longer than it would take to know if it was helping her depression.  She then

13  delayed filing suit until over four years after she stopped using the generic form of Zoloft, well

14  outside the statute of limitations.  Plaintiff has pled no facts that would permit her to proceed with

15  this stale claim, whether under a "delayed discovery" theory or otherwise.

16  And, finally, Plaintiff has failed to comply with the procedural requirement of the CLRA

17  requiring pre-suit notice to pursue a claim for damages.  Plaintiff advised the Court that she does

18  not intend to amend her Complaint on this point, thus her CLRA claim for damages must be

19  dismissed.

20  As the public domain articles Plaintiff cites in her complaint show, there is disagreement

21  among those who study depression about its cause and how to treat it.  What drugs should be

22  available to the millions afflicted by depression and how those drugs should be labeled are issues

23  that have been consigned to and belong with the experts at the FDA.  If Plaintiff believes the

24  experts have erred, remedies exist within the administrative framework, including a Citizen's

25  Petition to the FDA.  Pfizer therefore respectfully requests that the Court grant its motion and

26  dismiss Plaintiff's complaint without leave to amend.

27

28

# STATEMENT OF FACTS

## The FDA determined that Zoloft is an effective treatment for major depression

Zoloft (sertraline), which belongs to a class of medicines known as selective serotonin reuptake inhibitors (SSRIs), was approved for the treatment of major depression beginning in 1991. (Compl., ¶ 19.)[1] The FDA approved Zoloft after considering six clinical studies, two demonstrating a statistically significant effect over placebo and four showing none. (¶ 2.) Plaintiff does not allege that Pfizer withheld any studies from the FDA during the approval process. The FDA Advisory Committee assigned to consider Zoloft reviewed all available evidence, and, well aware that some had questions about efficacy, recommended approval. (¶ 39.)

Plaintiff describes a vigorous discussion within the FDA during the approval process. The Advisory Committee considered whether two positive studies were adequate to permit approval and concluded they were. (¶¶ 34, 35.) What Plaintiff characterizes as "machinations" by an Advisory Committee member, Dr. Leber, are revealed elsewhere in the Complaint to be nothing other than reminders to fellow committee members of the regulatory framework that governed the Committee. (¶¶ 35, 36, 38.)[2] Plaintiff attempts to impugn Dr. Leber's character with conclusory statements about a "pledge" to help get Zoloft approved, (¶ 35), but nowhere alleges improper conduct on his part or Pfizer's, or any improper relationship between them.

The FDA does not approve placebos. A medicine's approval for marketing represents the FDA's judgment that the medicine has proven efficacy. *See* 21 C.F.R. 314.126; (¶ 17). The FDA will not approve a label if there is a "lack of substantial evidence . . . that the drug product will have the effect" described in the labeling, or if the proposed label is "false or misleading in any particular." 21 C.F.R. 314.125(b)(5), (6). Labels may not contain a plethora of clinical studies. The label must discuss the clinical studies that "**support effectiveness** of the labeled indication(s)" but "must not include an encyclopedic listing of all, or even most, studies performed

---

[1] Unless otherwise stated, all paragraph citations are to paragraphs of the Complaint.

[2] By discussing these allegations, Pfizer does not concede that they are accurate. The evidence will show that plaintiff has taken statements out of context and grossly mischaracterized Dr. Leber's actions.

1    as part of the product's clinical development program."  21 C.F.R. 201.57(c)(15) (emphasis

2    added).

3         Once approved, a manufacturer cannot change the label without FDA approval.  21 C.F.R.

4    314.70(b)(v)(A).  Although an exception permits a manufacturer to make certain changes to the

5    label without pre-approval by the FDA, those changes must reflect "newly acquired information"

6    and cannot be based on the same clinical trials that were available to the FDA when it initially

7    approved the medicine.    21 C.F.R. 314.70(c)(6)(iii); FDA, CDER Guidance for Industry:

8    Changes    to    an    Approved    NDA    or    ANDA    (April    2004)    (available    at

9    www.fda.gov/downloads/Drugs/GuidanceComplianceRegulatoryInformation/Guidances/ucm0705

10   44.pdf).  Plaintiff does not allege any such new information.  Rather, she bases her arguments on

11   the information originally relied on by the FDA to approve Zoloft.[3]

12        **Plaintiff's alleged facts undermine her claims**

13        Plaintiff alleges that she has suffered from life-long depression; her doctor prescribed

14   Zoloft and its generic form sertraline between 2005 and 2008.  (¶¶ 7, 68, 70.)  Plaintiff fails to

15   provide any information about her experience with the medicine, why she used it for three years,

16   and when, during that three year period, she first suspected it was not working for her.

17        While denigrating Zoloft's efficacy, Plaintiff also admits that it works for some patients.

18   (e.g., ¶¶ 1, 2.)  She concludes that Zoloft's benefits are "primarily" explained by the placebo

19   effect, but she does not and cannot dispute that Zoloft has helped countless patients suffering from

20   depression.  Instead, her attack is directed towards the degree to which it is effective, a

21   determination that is individualized and subjective, as is true with treatments for mental disorders

22   generally.  (¶ 23.)

23        Physicians and their patients who suffer from depression have many antidepressants from

24   which to choose and many avenues to learn about those choices.  (¶ 14.)   There is copious

25

26   _____
     [3]   Although plaintiff discusses concerns with Zoloft's efficacy in Europe, she also

27   acknowledges that Europe has a different regulatory regime than the United States and that
     consumers in this country want "freer access to new and effective drugs," demands that represent a

28   different "collective attitude towards . . . new drug approvals."  (¶¶ 36, 40.)   The differing
     regulatory regime and cultural norms render the European experience irrelevant.

DEFENDANT PFIZER INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS

1   information about user experience with these medicines on the Internet. Physicians have myriad

2   sources of information, including journals, conferences, and comments from colleagues, as

3   evidenced by the articles Plaintiff cites in her Complaint. Doctors also have available another

4   very potent source of information to evaluate a medicine's efficacy – the first person reports of

5   their own patients. So informed, doctors have been prescribing Zoloft for over 20 years. (¶¶ 14,

6   20.)

### STANDARD

8   Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment on

9   the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial." The same

10  standard applies for a Rule 12(c) motion as for a motion to dismiss under 12(b)(6). *See*

11  *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). To survive a motion for

12  judgment on the pleadings, the plaintiff must demonstrate "enough facts to state a claim to relief

13  that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The

14  plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

15  possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

16  "[A]llegations of fact by the party opposing the motion [for judgment on the pleadings] are

17  accepted as true." *McGlinchy*, 845 F.2d at 810. However, the Court is not required to "assume

18  the truth of legal conclusions merely because they are cast in the form of factual allegations."

19  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (citation omitted).

20  "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

21  dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678.

### ARGUMENT

23  **I.    PLAINTIFF'S CLAIMS UNDER THE UCL, CLRA, AND FAL ARE BARRED BY THE SAFE HARBOR DOCTRINE**

24

25  The "safe harbor" doctrine shields defendants from liability under California's unfair

26  competition laws for engaging in conduct expressly permitted under state or federal law. *See Cel-*

27  *Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 182, 183 (1999); *Davis v.*

28  *HSBC Bank*, 691 F.3d 1152, 1165, 1166 & n.3 (9th Cir. 2012). This doctrine reflects the

DEFENDANT PFIZER INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS

1   principle that "[c]ourts may not simply impose their own notions of the day as to what is fair or
2   unfair." *Cel-Tech*, 20 Cal. 4th at 182. Rather, "[i]f the Legislature has permitted certain conduct
3   or considered a situation and concluded no action should lie, courts may not override that
4   determination." *Id.* While *Cel-Tech* originally established the safe harbor doctrine in the context
5   of a claim under the UCL's "unfair" prong, courts since have held that the doctrine also applies to
6   the "fraudulent" and "unlawful" prongs of the UCL, as well as to claims under the CLRA and
7   FAL. *See, e.g.*, *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933-34 (9th Cir. 2011); *Lopez v. Nissan*
8   *N. Am., Inc.*, 201 Cal. App. 4th 572, 576, 590-95 (2011).

9       Here, as the Ninth Circuit's controlling decision in *Alvarez* demonstrates, Plaintiff's UCL,
10   CLRA, and FAL claims must be dismissed under the safe harbor rule. In *Alvarez*, the plaintiffs
11   asserted UCL and CLRA claims against defendant gasoline companies, alleging that defendants'
12   gas pumps dispensed a small amount of residual fuel to consumers from the prior consumer's
13   transaction, such that if a prior consumer had purchased lower-grade gas than the next consumer in
14   line, a subsequent consumer would be overcharged. *See* 656 F.3d at 928. A California
15   regulatory agency, the Division of Measurement Standards ("DMS"), regulates retail gasoline
16   dispensing, and the design of gas pump dispensers must be submitted to DMS, which certifies that
17   the submitted design meets the requirements of California's regulatory regime. *See id.* at 929.
18   Because the California regulatory framework created specific requirements for gasoline
19   dispensers, and because defendants' dispensers complied with those requirements, the Ninth
20   Circuit concluded that the plaintiffs' claims that defendants "violated the [UCL and] CLRA by
21   causing, and failing to disclose, the residual fuel situation" were barred under the safe harbor. *Id.*
22   at 934. Accordingly, the Ninth Circuit affirmed the District Court's dismissal of the complaint
23   with prejudice under Rule 12(b)(6). *Id.*

24       The same analysis applies here. Just as the California DMS regulates gas dispensers and
25   only allows dispensers to be used if the DMS has first inspected and approved them, the FDA
26   regulates prescription drugs, and allows drugs to be brought to market only where the FDA has
27   determined they are safe and effective, and only after the FDA has approved the contents of the
28   drug label. *See* 21 C.F.R. § 314.125(b)(5); *id.* (FDA approval represents the agency's

determination "that the drug product will have the effect" described on the label). The FDA's approval of Zoloft's label here thus signified that:

- there was no "lack of substantial evidence consisting of adequate and well controlled investigations" supporting the indication (major depression) for which approval was sought, *id.* § 314.125(b);

- Zoloft would "have the effect it purports or is represented to have under the conditions of use prescribed, recommended, or suggested in its proposed labeling," *id.*;

- there was no evidence that Zoloft's "proposed labeling [was] false or misleading in any particular," *id.*;

- and there was no evidence that "[t]he application contain[ed] an untrue statement of a material fact," *id.*

Accordingly, just as the *Alvarez* plaintiffs' challenge to a DMS-approved fuel dispenser was rejected because it sought to impose UCL and CLRA liability for engaging in conduct that was approved by regulatory authorities, Plaintiff's challenge to the FDA's approval of Zoloft, and the contents of its FDA-approved drug label, must be rejected here. *Alvarez*, 656 F.3d at 933; *see also Pom Wonderful LLC v. Coca Cola Co.*, No. 08-6237, 2013 WL 543361, at *5 (C.D. Cal. Feb. 13, 2013) (applying safe harbor doctrine and holding that defendant could not be held liable under the UCL and FAL where its allegedly misleading pomegranate juice label complied with regulations promulgated by the FDA); *In re PPA Cases*, Case No. JCP-4116, Order at 14-16 (Los Angeles Sup. Ct. Aug. 23, 2002) (UCL unlawfulness claim barred by safe harbor where FDA approved over-the-counter drug as labeled).

Plaintiff's claim in this lawsuit is that Pfizer should have gone above and beyond what the FDA permitted it to do under federal regulations, and that Pfizer should have disclosed even more information on the label, including disclosing Plaintiff's (erroneous) view that Zoloft was no more effective than a placebo. Regardless of whether Pfizer could have unilaterally decided to disclose the additional information Plaintiff wants to see on the label (which, as explained in Section II, it could not), the fact is that Pfizer did exactly what federal law permitted it to do. And under the safe harbor rule, that ends the inquiry.

## II.    PLAINTIFF'S CLAIMS ARE PREEMPTED

### A.    Claims Challenging The FDA Approval Process Are Preempted

Plaintiff's claims challenge two aspects of the approval process for Zoloft: She alleges that Pfizer brought improper influence to bear, and she alleges the studies Pfizer presented to the FDA were "flawed," thus affecting the ultimate risk/benefit assessment the FDA made. (¶¶ 2, 29, 31, 32, 35, 38.) Plaintiff does not claim that Pfizer withheld information from the FDA. She admits that all six clinical studies addressing efficacy were submitted to the FDA for its consideration. At bottom, Plaintiff contends that the FDA got it wrong when it approved Zoloft as an effective treatment for major depression, that it did so only because the approval process was flawed and, therefore, that Pfizer should be held liable for marketing Zoloft for its approved indication. Such claims are preempted.

The Supreme Court has made clear that claims premised on the theory that a prescription drug never should have been approved by the FDA and, therefore, should not have been sold by the defendant are preempted. First, the United States Supreme Court has definitively ruled that claims that the FDA process was corrupted, i.e., state law "fraud on the FDA" claims, are preempted. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350 (2001). More recently, in *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011), the Supreme Court again recognized that, under *Buckman*, "federal drug and medical device laws pre-empt[] a state tort-law claim based on failure to properly communicate with the FDA." *Id.* at 2578. And, most recently, in *Mutual Pharmaceutical Co. v. Bartlett*, 133 S. Ct. 2466 (2013), the Supreme Court held that plaintiffs cannot circumvent federal preemption by arguing that a manufacturer can avoid liability under state law simply by not selling an FDA-approved medicine. *See id.* at 2477-78. Significantly, in *Bartlett*, the Supreme Court explained that, absent evidence of **new and significant information not considered by the FDA**, sufficient to warrant a market withdrawal under federal law, state law "stop selling" claims conflict with federal law. *See id.* at 2477 & n. 4.

For example, in *Buckman*, the plaintiff claimed that the manufacturer of orthopedic bone screws made fraudulent representations to the FDA during the approval process. The screws malfunctioned when implanted during surgery, leading to 2,300 civil suits, many asserting state

law fraud-based claims alleging "the devices were improperly given market clearance." 531 U.S. at 347. The Court held that "[s]tate law fraud-on-the-FDA claims inevitably conflict with the FDA's responsibility to police fraud consistently with the Administration's judgment and objectives." *Id.* at 350. It explained the chaos that would result if the law were otherwise: "As a practical matter, complying with the FDA's detailed regulatory regime in the shadow of 50 States' tort regimes will dramatically increase the burdens facing potential applicants – burdens not contemplated by Congress in enacting the [Food, Drug and Cosmetic Act ("FDCA")]." *Id.* at 350. It also pointed to the many statutes and regulations available to the FDA, the federal government, and consumers for addressing suspected fraud on the FDA. *Id.* at 348-49.

The Court's decision is grounded in the recognition that the FDA deals with complex and technical subject matter. Any medical device or prescription drug that provides benefits to vast numbers of people inevitably will not benefit all. The FDA seeks a "balance" of the risks and benefits of medical treatments, which can be "skewed by allowing fraud-on-the-FDA claims under state tort law." *Id.* at 348. Because the FDA "pursues difficult (and often competing) objectives," decisions about solutions to medical problems require a "measured response" that the FDA, with its internal expertise and advisory bodies, is best suited to achieve. *See id.* at 348-49. As the Court determined, the inexorable consequence of permitting consumers to challenge FDA determinations under state laws imposing varying requirements, is conflict with the FDA's statutory mandate.

In *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109 (9th Cir. 2013), the Ninth Circuit applied *Buckman* to a claim that Nidek failed to disclose to consumers that the laser it marketed for eye surgeries did not have FDA approval for the treatment of farsightedness at the time of their surgeries. Perez sued for "fraud by omission" – the same claim Plaintiff makes here (i.e., that Pfizer "deliberately withheld," "omitted," "misled" "failed to disclose" and "concealed" information about negative clinical studies; *see, e.g.,* ¶¶ preamble, 4, 101, 102, 109, 117, 133). The Court found the claim expressly preempted by the Medical Device Act, but also found it impliedly preempted because a plaintiff "cannot bring a claim that rests solely on the non-disclosure to patients of facts tied to the scope of [pre-market] approval." *Id.* at 1119.

As in *Buckman* and *Perez,* Plaintiff here asserts claims based on conduct that occurred during the approval process ("flawed" studies and "machinations" of an Advisory Committee member) and for "concealment" of "true" efficacy, which the FDA reviewed and resolved prior to approval. Here, as in *Buckman*, Plaintiff argues that, but for the Defendant's conduct, the FDA would not have approved Zoloft as a treatment for major depression. Consequently, Plaintiff's claims are preempted.

**B. Any Claim That Pfizer Should Have Changed the Label Post-Approval Is Preempted**

Plaintiff cannot avoid *Buckman* preemption by arguing that Pfizer should have changed the label post-approval in an attempt to bring her claims within the scope of *Wyeth v. Levine*, 555 U.S. 555 (2009). *Levine* (which Plaintiff cites in her Complaint, *see* p. 7, n. 2) is inapplicable here because her case, fundamentally, is not about whether Pfizer had reason to change the label post-approval, but whether Zoloft should have been approved in the first instance. Her attempt to characterize her case as a label challenge is merely obfuscation to avoid preemption. By seeking a label change that would advise physicians that Zoloft is no more effective than a placebo, or that would describe the results of clinical trials in a way that supports Plaintiffs' contention that the efficacy of Zoloft is unproven, Plaintiff cannot escape the fact that what she wants is a label that would advise doctors **not** to prescribe Zoloft for its approved indication. However, if, as Plaintiff contends, Zoloft is not effective, the remedy is not a label change, but a market withdrawal. And, as discussed in the preceding Section II.A., that claim is preempted.

*Levine* does not apply to this case for a second reason: the conditions that led to the Court's decision do not exist here. In *Levine*, the plaintiff challenged a label for a medicine that failed to include a sufficient warning about a particular risk. There, the plaintiff presented evidence of 20 incidents similar to the one that caused her injury. All occurred prior to hers but **post-approval** of the drug by the FDA. *Id.* at 562-63. The Supreme Court rejected Wyeth's defense that it would have been impossible for it to change the label without violating federal law because, in that circumstance, there was a procedure available to Wyeth that allowed it to change the label on its own. The procedure, known as "changes being effected" (CBE), permits a manufacturer to

make certain label changes while the FDA is considering whether such changes are appropriate. The lynchpin of the procedure is that there must be "newly acquired information" that causes such a change to be warranted. In *Levine*, the Court held that the 20 post-approval incidents constituted new information that implicated the CBE procedure. *Id.* at 569-70.

In subsequent decisions, the Supreme Court confirmed that *Levine* is not applicable where a manufacturer cannot unilaterally change a label. In *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011), plaintiffs claimed that state law required a manufacturer of a generic drug to provide a stronger warning than the one the FDA approved *See id.* at 2573-74 (describing allegations). The manufacturer argued for conflict preemption because it could not comply with both federal law that **prohibited** generic manufacturers from changing their labels of their own volition and state law that **required** it to change its label. *Id.* at 2573. Plaintiffs argued that any conflict could be avoided by requiring the defendants to ask the FDA to approve a stronger label, but the Supreme Court rejected that argument. *Id.* at 2579. It observed that "[t]he question for 'impossibility' is whether the private party could **independently** do under federal law what state law requires of it," *id.* (emphasis added), explaining:

> Before the Manufacturers could satisfy state law, the FDA – a federal agency – had to undertake special effort permitting them to do so. To decide these cases, it is enough to hold that when a party cannot satisfy its state duties without the Federal Government's special permission and assistance, which is dependent on the exercise of judgment by a federal agency, that party cannot independently satisfy those state duties for pre-emption purposes.

*Id.* at 2580-81. Because the CBE procedure was not available to defendant (in this instance, because it was a generic manufacturer), it could not comply with state law by **independently** changing its label and, thus, *Levine* was not applicable. *Id.* at 2579.

Here too, Plaintiff is asking the Court to find that Pfizer could and should have changed Zoloft's label on its own and substituted a label directly conflicting with the one the FDA approved ("not effective" instead of "effective"). But no procedure would permit Pfizer to do so. As in *Mensing*, the CBE process is inapplicable. The CBE procedure is restricted to instances where there is "newly acquired information." 21 C.F.R. § 314.70(c)(6)(iii). "Newly acquired information" is new data, or a "new analyses of previously submitted data." *Wyeth*, 555 U.S. at

569. The CBE process cannot be used to make "[c]hanges to the clinical pharmacology or the clinical study section reflecting new or modified data" or "[c]hanges based on data from preclinical studies." FDA, CDER Guidance for Industry: Changes to an Approved NDA or ANDA, 24 (April, 2004), available at www.fda.gov/OHRMS/DOCKETS/98fr/1999d-0529-gdl0003.pdf.

Unlike in *Levine*, with its 20 post-approval incidents of serious injury, Plaintiff in this case alleges no "newly acquired information." Her claims rely on the same studies the FDA considered when it initially approved Zoloft. Plaintiff recounts discussions where criticisms of Zoloft were debated, but those were all pre-approval. The post-approval articles she includes in her complaint do not constitute "new analyses" of the data, but rather re-hash the same arguments that were made at the time Zoloft was approved. To be sure, there is debate in the scientific community about how to treat depression, but that debate already existed when the FDA approved Zoloft. Because Pfizer cannot unilaterally have changed its label on its own without running afoul of FDA regulations and guidelines, Plaintiffs' claims are preempted.[4]

Even if Plaintiff could clear the hurdle requiring newly-acquired evidence, her claim would still be preempted. State law claims are preempted where "clear evidence" exists that the FDA would not approve the proposed new label. *See Levine*, 555 U.S. at 571. In *Levine*, Wyeth could have used the CBE procedure to effect a label change because there was no "clear evidence" that the FDA would not have approved such a change, given the significant new data about the drug that had emerged since the FDA first approved it. The Court, however, acknowledged that other situations could differ and preemption would be warranted. *Id.* at 581 This is such a case.

There is ample evidence that the FDA would not have approved the "no better than placebo" label detailing negative clinical studies that Plaintiff advocates. To begin with, the FDA prohibits an "encyclopedic listing of all, or even most, studies performed as part of the product's

---

[4] Even in pre-*Levine* pharmaceutical cases where courts considered the issue of preemption, the plaintiffs contended that a manufacturer could use the CBE process to strengthen a warning. *See, e.g., Motus v. Pfizer Inc.*, 127 F. Supp. 2d 1085, 1094 (C.D. Cal. 2000). In *Motus*, the plaintiff did not argue, as plaintiff does here, that the manufacturer should have used a label that collided head on with what the FDA approved.

DEFENDANT PFIZER INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS

clinical development program," and requires that only studies supporting the labeling be contained on the label. 21 C.F.R. § 201.57(c)(15). The FDA has reviewed Zoloft numerous times since its first approval, and has issued letter after letter stating that Zoloft is "effective." *See* Pfizer's Request for Judicial Notice, submitted herewith (showing the FDA's repeated determinations of efficacy for Zoloft). A third Pfizer-sponsored clinical study that showed sertraline to be much more effective than placebo in treating depression was completed in 1992. The study was included in the FDA labeling beginning in 1992 and included in an updated form, reflecting final results of the 44-week trial, in subsequent labels approved by the FDA beginning in 1997 and continuing through the most recent version, approved in February 2013. *Id.*

In other words, in the face of the same evidence that Plaintiff recites in her complaint, the FDA weighed the risks and benefits of Zoloft and decided, on balance, and multiple times, that the public should have access to this medication. At all times, debate existed among some about the efficacy of SSRIs in general, including Zoloft. But those with expertise at the FDA decided the public was better served by having access to the medication – clear evidence that the FDA would not have authorized the label change Plaintiff espouses.

## C. Plaintiff's Challenge to Pfizer's Zoloft Marketing Consistent with its FDA-Approved Label Is Preempted

Although Plaintiff's complaint contains an array of allegations disapproving of components of Pfizer's marketing (working with "key opinion leaders," for example), her challenge to Pfizer's advertising converges on one point: Pfizer should have advertised that Zoloft was no more effective than a placebo. She faults Pfizer for:

- describing Zoloft as "effective" (¶ 66),
- not revealing "that the majority of clinical trials showed that Zoloft was no better than placebo" (¶ 67),
- publishing ads that involved a character who would be "depressed or happy depending on whether it had recently taken Zoloft" (¶ 127), and
- deploying a commercial for allegedly "touting" Zoloft's efficacy because it states: "When you know more about what's wrong, you can help make it right" (¶ 128).

As is apparent, Pfizer claims no more than what the FDA approved: Zoloft is effective in treating depression.[5] As a result, Plaintiff's challenge to Pfizer's marketing is preempted. *See Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1234 (S.D. Fla. 2007); *In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, No. M: 05-1699, 2006 U.S. Dist. LEXIS 95500 (N.D. Cal. Aug. 16, 2006).

In *Prohias,* the plaintiffs challenged Lipitor advertisements that were inconsistent with the FDA-approved label as well as those that were consistent with it. The court found no preemption for the inconsistent advertisements but found that that federal law preempted claims for those that were consistent. The FDA had approved Lipitor to "reduce the risk of heart attacks" in certain persons. *Id.* at 1234. "Accordingly, any advertisements that stated or implied that Lipitor reduced the risk of heart disease or heart attacks simply marketed an approved use for the drug." *Id.* Because the ads in question "derive from and largely comport with, the approved label," the effort to hold Pfizer liable for them "conflicts with the FDA's jurisdiction over drug labeling." *Id.* The FDA's approval of the advertised use reflected its determination "that the information is not 'false or misleading.'" *Id.* at 1235.

In the Bextra and Celebrex MDL, the Court addressed claims related to drugs known as COX-2 inhibitors, which were marketed as pain relievers with lesser gastrointestinal side effects than other pain relievers. Plaintiffs alleged that the marketing claims were false and that the manufacturer suppressed data showing that the drugs increased cardiovascular incidents. *See* 2006 U.S. Dist. LEXIS 95500, at *42. With respect to the cardiovascular claims, the court framed the question as "whether plaintiffs seek to hold Pfizer liable for failing to include in its promotional materials a warning which the FDA has determined is not substantiated by scientific evidence." *Id.* at *66. Because the FDA had considered and rejected the exact claim that

---

[5] The FDA has ample authority under the FDCA, 21 U.S.C. § 301 *et. seq.*, to address deceptive marketing. *See* 21 C.F.R. § 202.1. The agency's Office of Prescription Drug Promotion ("OPDP"), has the responsibility "[t]o protect the public health by assuring prescription drug information is truthful, balanced and accurately communicated." OPDP Mission Statement, available at http://www.fda.gov/AboutFDA/CentersOffices/OfficeofMedicalProductsandTobacco/CDER/ucm090142.htm (last visited Aug. 5, 2013). The FDA can bring enforcement actions, seize misbranded drugs and issue injunctions. *See Sanderson Farms, Inc. v. Tyson Foods, Inc.*, 549 F. Supp. 2d 708, 716 (D. Md. 2008); 21 U.S.C. §§ 332-334.

DEFENDANT PFIZER INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS

plaintiffs alleged Pfizer should have warned about in its advertising materials, the Court found plaintiffs' claims preempted: "Plaintiffs' state law failure-to-warn claims conflict with the FDA's determination of the proper warning and pose an obstacle to the full accomplishment of the objectives of the FDCA." *Id.* at. *66-68. Here, too, Plaintiff makes no claim that Pfizer marketed Zoloft beyond what the FDA authorized. Her claims are, therefore, preempted.

A finding that Plaintiff's claims are preempted is just. The FDA weighed negative and positive studies and decided, on balance, the public would benefit from Zoloft. Physicians and therapists who have treated patients suffering from depression have accumulated their own store of knowledge about its effectiveness from a potent source: what their patients report to them. It defies common sense to believe that the psycho-therapeutic community would continue to prescribe Zoloft for over two decades if it were not effective in treating depression. The FDA's scientific judgment thus has been borne out.

## III.  PRIMARY JURISDICTION OVER PLAINTIFF'S CLAIMS LIES WITH THE FDA

Plaintiff has not alleged – and could not truthfully allege – that there are not countless people who rely on Zoloft to provide relief from depression. Notwithstanding, she urges this Court to deprive those people of access to their medication by issuing a declaratory judgment stating it is not effective and ordering that it be removed from the market – drastic action by any measure for both Pfizer and those who use Zoloft to relieve their depression. The Court should decline to take up Plaintiff's request and find instead that primary jurisdiction over such a matter resides with the FDA.

Primary jurisdiction is a prudential doctrine "under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). A Court considering whether to defer to an agency weighs four factors:

> (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity that (4) requires expertise or uniformity in administration.

1 *Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775, 781 (9th Cir. 2002) (as

2 amended). This Court has indicated that it may be appropriate to "abstain and dismiss" a claim

3 where plaintiff seeks "to second guess a decision by the FDA." *Brazil v. Dole Food Co., Inc.*,

4 No. 12-1831, 2013 U.S. Dist. LEXIS 42026, at *32-33 (N.D. Cal. Mar. 25, 2013).[6] Here,

5 Plaintiff challenges the FDA's determination that Zoloft is effective to treat major depression and

6 urges the Court to re-write the Zoloft label in a way that contravenes the FDA's regulations and

7 determination that Zoloft's label adequately described the scientific studies supporting efficacy.

8 "Second-guessing" the FDA is precisely what Plaintiff seeks to do here by urging this Court to

9 reverse the FDA's repeated determinations that Zoloft is effective to treat major depression.

10 The factors that contribute to a finding of primary jurisdiction in an agency are present

11 here. The FDA's authority over labeling was discussed earlier. It can remove products from the

12 market either through a recall or a product withdrawal. *See* 21 C.F.R. § 314.150 (withdrawal); 21

13 C.F.R. § 7.40(a)(recalls). *See Clark v. Actavis Group HF*, 567 F. Supp. 2d 711, 713 n.2 (D.N.J.

14 2008) (recalls may be initiated by firm or FDA). Plaintiff can file a Citizen's Petition to express

15 her concerns. *Id.* at 719; *Bernhardt v. Pfizer, Inc.*, No. 00-4379, 2000 WL 1738645, at *3

16 (S.D.N.Y. Nov. 22, 2000) (FDA has authority to alert consumers to gross deception, request label

17 revision, or act pursuant to a Citizen's Petition).

18 The decisions in these analogous cases show that invoking primary jurisdiction in this case

19 would be prudent. In *Clark*, the FDA had initiated a Class I recall (for danger of serious injury or

20 death). *Id.* at 713. Plaintiffs sued, demanding that defendant also provide "urgent notice" to the

21 class, with more information regarding the toxicity of the accused drug. *Id.* at 714. Plaintiffs

22 claimed that the Court did not need to engage in any medical or technical analysis because the

23 information they sought was already contained on the label. *Id.* at 715. Defendants disagreed,

24 arguing that because the FDA had approved the recall notice as is, the Court would need to

25 "conduct extensive medical and policy analysis" to rewrite the notice. *Id.* at 716. The Court

26

27    [6] In addressing a primary jurisdiction argument in *Brazil*, the Court distinguished *In re Paxil Litig.*, 218 F.R.D. 242 (C.D. Cal. 2003). In *Paxil*, the Court declined to certify a class because, in
28 part, it did not believe a jury should "be the final arbiter of Paxil's safety." *Id.* at 248.

agreed with defendants and held that primary jurisdiction applied. *Id.* at 719. Among the factors that contributed to its decision were that Congress had vested the FDA with regulatory authority over recalls because the FDA had the "necessary expertise." *Id.* at 717. The Court also recognized that it could not divest the FDA of its regulatory authority over recalls and that, as a result, even if the Court issued a notice, the FDA could still issue a notice of its own, leading to inconsistency. *Id.* at 718-19. That inconsistency easily could result here, too, and in fact is likely because the label that Plaintiff proposes – indicating that Zoloft is no more effective than placebo – is one the FDA would be required to reject under its regulations.

In *Heller v. The Coca-Cola Co.*, 646 N.Y.S.2d 524 (1996), the Court held that primary jurisdiction barred a request for injunctive relief seeking to force defendant to include a "sell by" date on products containing Aspartame. Recognizing that the FDA had authority to determine if food was deceptively labeled and had promulgated labeling requirements that did not include a "sell by" date, the Court deferred. It ruled that allowing the FDA to handle the matter would "utilize special expertise of the FDA in evaluating the relevant factors for approving food additives." *Id.* at 769-70. Of particular relevance to this case, the Court took note of the fact that the FDA had studied Aspartame "for over a decade," just as the FDA has a long history of studying SSRIs. *Id.*; ¶ 19.

The Court in *Physicians Comm. for Responsible Med. v. Gen. Mills, Inc.*, 2006 U.S. Dist. LEXIS 87047 (E.D. Va. Nov. 30, 2006), also held that primary jurisdiction resided in the FDA with respect to claims that consuming dairy products could lead to weight loss. There, plaintiff wanted the advertisements with the allegedly offending remarks removed. *Id.* at *5. The Court held that the FDA was "better suited to address the scientific issue of the effects of dairy product consumption on weight gain and fat burning." *Id.* at *23.

Determinations of efficacy implicate "complex chemical and pharmacological considerations" and the "evaluation of conflicting reports as to the reputation of drugs among experts in the field is not a matter well left to a court without chemical or medical background." *Weinberger v. Bentex Pharmaceuticals, Inc.*, 412 U.S. 645, 653-54 (1973). Here, the FDA has been studying SSRIs for decades. (¶ 19.) It has an Advisory Committee of experts devoted to

DEFENDANT PFIZER INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS

the issue and has considered Zoloft's label on multiple occasions. The deep knowledge the FDA has to bring to bear on the issue of Zoloft's efficacy, and its broad public health perspective, cannot be replicated in this lawsuit. Given the widespread use of Zoloft and the other SSRIs by physicians and their patients, the fact that the FDA is uniquely suited to engage in the "delicate balancing" of risks and benefits that this matter would require, and the fact that this cases raises no urgent safety issue, deferring the issue in favor of the FDA is the prudent course.

## IV.  THE COURT SHOULD DISMISS COUNT I (FOR DECLARATORY AND INJUNCTIVE RELIEF)

### A.  Plaintiff Cannot Bring A Stand-Alone Claim for Equitable Relief

In Count I, Plaintiff seeks a declaration that Zoloft's label is misleading and an injunction that "[p]ermanently enjoins Pfizer from continuing to sell or market Zoloft with its current drug label and directing Pfizer to seek FDA approval of a new label that properly discloses Zoloft's efficacy." (¶¶ 93, 138(c)(ii).)

Claims for declaratory and injunctive relief, unmoored to any underlying claim for relief, cannot stand; injunctions and declaratory judgments are remedies, not claims. In *Sullivan v. JP Morgan Chase Bank, NA*, 725 F. Supp. 2d 1087 (E.D. Cal. 2010), the court made this clear with respect to claims for injunctive relief:

> Under federal law, an injunction is a remedy, not a claim in and of itself. See *Curtis v. Option One Mortg. Corp.,* No. 109-cv-1608 AWI SMS, 2010 WL 599816, at *13 (E.D.Cal. Feb. 18, 2010) (citing *Washington Toxics Coalition v. Environmental Protection Agency,* 413 F.3d 1024, 1034 (9th Cir.2005)). Similarly, under California law, an injunction is a remedy, not a cause of action. *Id.* (citing *Shamsian v. Atlantic Richfield Co.,* 107 Cal.App.4th 967, 985, 132 Cal.Rptr.2d 635 (2003)). Therefore, Plaintiffs' purported "cause of action" for injunctive relief is dismissed.

*Id.* at 1099. And in *Ros v. Deutsche Bank Nat'l Trust Co.*, No. 12-1929, 2013 U.S. Dist. LEXIS 91495 (S.D. Cal. June 27, 2013), the same statement was made with respect to declaratory judgment claims:

> The Declaratory Judgment Act does not independently create a claim for relief. Its operation 'is procedural only' in that it provides a remedy and defines procedure in relation to cases and controversies in the constitutional sense.

*Id.* at \*11-12 (quotations omitted); *see also Univ. Gardens Apts. Jt. Venture v. Johnson*, 419 F. Supp. 2d 733, 742 (D. Md. 2006) ("Neither the Declaratory Judgment Act nor Rule 65 provide a basis for an independent claim. Rather, they are available forms of relief, should the court otherwise have a valid cause of action before it."); *Staacke v. U.S. Sec'y of Labor*, 841 F. 2d 278, 280 (9th Cir. 1988) (Declaratory Judgment Act "does not itself confer federal subject matter jurisdiction").

With respect to her Declaratory Judgment claim, Plaintiff could not have been clearer that she is seeking an advisory opinion. She states that her intent is to obtain a declaration from this Court so that she can export that declaration to "individual claims for consumer fraud" (presumably in courts throughout the country). (¶ 96.) As such, the declaration would not resolve any conflict because no liability will be established and no rights will be determined; any member of the nationwide class who seeks relief still will need to file an individual suit based on some applicable state law and prove a claim for relief, an impermissible use of declaratory relief. *See Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 246 (1952) (refusing declaratory relief because the proposed decree "cannot end the controversy.").

A determination that something is "deceptive" or "misleading" has different meanings under the laws of different states and Plaintiff's Count I appears to be an effort to avoid the problems inherent in a nationwide class based on alleged consumer fraud. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591, 596 (9th Cir. 2012) (holding that laws of multiple jurisdictions overwhelm common issues and preclude predominance for a nationwide class). The device she attempts to use – a freestanding claim for declaratory and injunctive relief – is invalid.

**B.    Plaintiff Has No Standing To Seek Equitable Relief**

For Plaintiff to have standing to bring claims for declaratory and injunctive relief, she must show that her "injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Past exposure will not suffice if there are no "continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (immediate danger of direct injury required for injunctive relief); *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (standing for injunctive relief

1   requires ongoing or prospective injury). To obtain prospective relief against ongoing conduct, a

2   plaintiff must demonstrate that he or she is "realistically threatened by a repetition of the [alleged]

3   violation." *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (emphasis omitted). The

4   same analysis applies to requests for declaratory relief. *See Lyons*, 461 U.S. at 104; *Hodgers-*

5   *Durgin v. de la Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999).

6       Plaintiff stopped taking Zoloft over five years ago, and has not alleged that she has plans to

7   take it again. With no intent to purchase Zoloft in the future, Plaintiff cannot demonstrate that she

8   is "realistically threatened" by a repetition of the violations alleged in the Complaint.

9   Accordingly, prospective relief, whether in the form of a declaration or an injunction, will do

10  nothing to protect Plaintiff from these allegedly false advertising claims, and she therefore has no

11  standing to seek such relief. *See Castagnola v. Hewlett-Packard Co.*, No. 11-5772, 2012 WL

12  2159385, at *6 (N.D. Cal. June 13, 2012); *see also Mason v. Nature's Innovation, Inc.*, No. 12-

13  3019, 2013 WL 1969957, at *5 (S.D. Cal. May 13, 2013) (plaintiff who was not going to buy a

14  skin care product again could not sue for injunction); *Delarosa v. Boiron, Inc.*, No. 10-1569, 2012

15  WL 8716658 (C.D. Cal. Dec. 28, 2012) (plaintiff who was not going to purchase product again

16  could not sue for injunction); *Wang v. OCA Tech. Group, Inc.*, 276 F.R.D. 618, 627 (N.D. Cal.

17  2011) (plaintiff who was not going to purchase allegedly mislabeled hard drives again could not

18  sue for injunction).[7]

19  **V.  PLAINTIFF'S CLAIMS ARE TIME-BARRED**

20      Under California law, the statute of limitations begins to run when Plaintiff allegedly

21  sustained injury from defendant's conduct. *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th

22  1185, 1191 (2013). Plaintiff stopped taking Zoloft in August 2006, and took the generic version

23  sertraline until June 2008. (¶ 70.) Plaintiff therefore knew at the latest by June 2008 that Zoloft

24      [7]  There is at least one unpublished district court order to the contrary. *See Henderson v.
        *Gruma Corp.*, No. 10-4173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011). But that decision –
25      which does not even acknowledge the existence of contrary, controlling authority – is both wrong
        and an outlier. Both the Supreme Court in *Lyons* and the Ninth Circuit in *Hodgers-Durgin* have
26      held that the injury sought to be avoided must be personal to the named plaintiff; whether the
        proposed injunction would redress an injury suffered by unnamed class members is irrelevant to
27      whether the individual plaintiff has standing. *See Lyons*, 461 U.S. at 102; *Hodgers-Durgin*, 199
        F.3d at 1044-45.
28

1 | was supposedly ineffective for treating her depression.  (*Id.*)  She filed suit on January 30, 2013.

2 | At that point, well over four years had elapsed since her last usage.[8]  Because the longest statute

3 | of limitation for any of her claims is four years, her claims are all time-barred.[9]

4 | Plaintiff alleges that she learned in early 2012 that "Pfizer had misrepresented Zoloft's

5 | efficacy" (¶ 74), suggesting she intends to rely on a theory of delayed discovery to save her

6 | claims.  But this doctrine requires a plaintiff to plead facts showing that despite diligent

7 | investigation, she could not have reasonably discovered facts supporting her claim within the

8 | limitations period.  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808-09 (2005); *Vaccarino*

9 | *v. Midland Nat. Life Ins. Co.*, No. 11-05858, 2012 WL 1247137, at *4 (C.D. Cal. Apr. 13, 2012)

10 | (plaintiff must "specifically plead facts which show (1) the time and manner of discovery and (2)

11 | the inability to have made earlier discovery despite reasonable diligence").  The rule does not

12 | extend the limitations period indefinitely:  The "rule does not postpone the accrual of a cause of

13 | action until a plaintiff *actually* discovers the relevant facts.  Instead, the delayed discovery rule

14 | provides that a cause of action does not accrue until a plaintiff suspects or *should have suspected*

15 | *the* defendant's wrongdoing."  *McCready v. Am. Honda Motor Co., Inc.*, No. 05-5247, 2006 U.S.

16 | Dist. LEXIS 44137, at *12 (N.D. Cal. June 19, 2006) (original emphasis). A "claim accrues when,

17 | simply put, [plaintiff] at least suspects that someone has done something wrong to [her]."

18 | *Soliman v. Philip Morris, Inc.*, 311 F.3d 966, 971 (9th Cir. 2002) (internal quotations and ellipse

19 | omitted).

20 | Plaintiff's Complaint lacks the factual detail necessary to allege delayed discovery.  There

21 | is no information about when she first discovered the drug did not work for her and thus was on

22 | notice that Pfizer's efficacy claims were "false."  Also missing is any explanation of how she

23 | finally "discovered" that Pfizer had "misrepresented" Zoloft's efficacy, and why she was unable to

24 |

25 |

---

26 | [8] Pfizer does not concede that the date she stopped taking the drug, rather than an earlier date, is the date the statute of limitations began running.

27 | [9] The applicable limitations periods for her claims are:  UCL (4 years, Cal. Bus. & Prof. Code
28 | § 17208); CLRA (3 years, Cal Civ. Code § 1783); and FAL (3 years, Cal. Code Civ. Proc. § 338(a)).

DEFENDANT PFIZER INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS

discover it earlier.  Her complaint reveals that there was copious published information regarding whether SSRIs, including Zoloft, were or were not more effective than placebo.  For example:

- 11 years before she filed suit, Kirsch published an article about the data the FDA considered for SSRIs, including Zoloft (*see* ¶ 23, Kirsch article, p. 2);

- Five years before she filed suit, there were multiple articles addressing the topic (*see* ¶ 23, Kirsch article, p. 0261; ¶ 48, Turner article discussing selective publication of articles about drugs, including Zoloft, pp. 257-58);

- Four years before she filed suit, Angell published an article about the studies submitted to the FDA (¶ 46, referring to Zoloft at p. 7);

- Three years before she filed suit, Fournier published an article addressing SSRIs and placebo (¶ 23, see article at p. 51).

In other words, the same information that Plaintiff alleges was "concealed" is revealed by her complaint to have been publicly available.  "A plaintiff may plead herself out of court" with "facts which establish that [s]he cannot prevail" on her claim.  *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (internal quotations omitted).

Given Plaintiff's knowledge of her own experience with Zoloft, and the information that was available in the public domain, it is not plausible that Plaintiff can cure her pleading deficiency by amendment.  All that was required to begin the limitations period was knowledge that would have put a "reasonable person . . . on notice . . . that a representation is false." *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007).  It is not plausible for her to claim that after three years of ever-increasing dosages of Zoloft, she was not on notice that Pfizer's claims about Zoloft's efficacy were, as she alleges, false.

## VI.  PLAINTIFF'S CLRA DAMAGES CLAIM (COUNT II) MUST BE DISMISSED FOR FAILURE TO SATISFY THE REQUIREMENT OF PRE-SUIT NOTICE

Count II is Plaintiff's claim under the Consumers Legal Remedies Act ("CLRA").  She seeks both injunctive and monetary relief.  (¶¶ 104, 139(c)(iii).)  Plaintiff's claim for damages must be dismissed because Plaintiff failed to comply with the CLRA's requirement that "[t]hirty days or more prior to the commencement of an action for damages [under the CLRA], the consumer shall . . . [n]otify the person alleged to have" violated the CLRA "of the particular alleged violations" and "[d]emand that the person correct, repair, replace, or otherwise rectify" the violations.  Cal. Civ. Code § 1782(a).  Plaintiff did not provide Pfizer with such notice and does

DEFENDANT PFIZER INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS

not allege in her Complaint that she did so, notwithstanding that she acknowledges the requirement exists. (¶ 104.) Failure to allege that 30-day notice was provided requires dismissal of the claim for damages. *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 950 (S.D. Cal. 2007) (quoting *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 41 (1975)). Courts have held that the dismissal should be with prejudice. "[C]ompliance with this [notice] requirement is necessary to state a claim" and failure to comply with it "necessitates dismissal with prejudice." *Id.* at 949-50; *Davis v. Chase Bank U.S.A., N.A.*, 650 F. Supp. 2d 1073, 1089 (C.D. Cal. 2009); *Stearns v. Select Comfort Retail Corp.*, No. 08-2746, 2009 WL 1635931, at *15 (N.D. Cal. June 5, 2009); *Janda v. T-Mobile, USA, Inc.*, No. 05-3729, 2008 WL 4847116, at *6 (N.D. Cal. Nov. 7, 2008). *But see, e.g.*, *Deitz v. Comcast Corp.*, No. 06-06352, 2006 WL 3782902, at *5-6 (N.D. Cal. Dec. 21, 2006) (dismissing with leave to amend).[10]

## CONCLUSION

For the reasons set forth herein, Pfizer respectfully requests that Plaintiff's Complaint be dismissed without leave to amend.

Respectfully submitted,

DATED: August 5, 2013          QUINN EMANUEL URQUHART &
                               SULLIVAN, LLP


                               By */s/ Karin Kramer*
                                  Mark Cheffo
                                  Karin Kramer
                                  Attorneys for Defendant Pfizer Inc.

---

[10] Plaintiff's counsel stated at the CMC on July 17, 2013 that they did not intend to amend.

DEFENDANT PFIZER INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS