United States District Court

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LAURA A. PLUMLEE, an individual, on behalf of herself and all other persons similarly situated, <br><br>     Plaintiff, <br>  v. <br><br> PFIZER, INC., a New York Corporation, <br><br>     Defendant. | Case No.: 13-CV-00414-LHK <br><br> ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND |

Pfizer, Inc. ("Defendant" or "Pfizer") moves for judgment on the pleadings against Plaintiff Laura Plumlee ("Plaintiff"), ECF No. 39. Plaintiff opposes the motion, ECF No. 83. Pursuant to Civil Local Rule 7-1(b), , the Court finds this matter suitable for decision without oral argument and accordingly VACATES the hearing on this motion set for February 27, 2014, at 1:30 p.m. The Court also CONTINUES the Case Management Conference set for February 27, 2014, to June 4, 2014, at 2:00 p.m. Having considered the submissions of the parties and the relevant law, the Court hereby GRANTS Defendant's motion for judgment on the pleadings without prejudice because Plaintiff's claims are time-barred.

1
Case No.: 13-CV-00414-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

I.   **BACKGROUND**

   A.   **Factual Allegations**

Defendant Pfizer, Inc., a New York corporation headquartered in New York, New York, is a "pharmaceutical company involved in the research, development, testing, manufacture, production, distribution, marketing, and sale of numerous pharmaceutical products." Complaint ¶ 10, ECF No. 1. Pfizer manufactures and sells Zoloft, known generically as sertraline, which the FDA approved in 1991 for the treatment of major depressive disorder.[1] *Id.* ¶¶ 10, 19. Plaintiff Laura A. Plumlee is a resident of California. *Id.* ¶ 9. On or about March 18, 2005, Plaintiff was prescribed Zoloft to treat her ongoing depression, and she continued to purchase and ingest Zoloft until August 11, 2006, when she switched to a generic formulation of sertraline. *Id.* ¶¶ 68, 70.

Plaintiff alleges that Pfizer has made and continues to make a variety of unlawful, false, and misleading statements, and has concealed and continues to conceal material information, about the efficacy of Zoloft in treating depression. *Id.* ¶¶ 4–6. Plaintiff alleges that Pfizer made such misrepresentations and omissions both in marketing and advertising Zoloft and on its drug labeling, and that Plaintiff purchased Zoloft on the basis of these misrepresentations and omissions. *Id.* ¶¶ 7, 74.

   1.   **Zoloft**

Zoloft, known generically as sertraline, is a "selective serotonin reuptake inhibitor ("SSRI")." *Id.* ¶ 16. SSRIs like Zoloft are antidepressants that counteract what is theorized to be the "primary physiological cause of depression": deficient levels of serotonin in the brain. *Id.* SSRIs inhibit the brain's reuptake of serotonin, increasing otherwise deficient levels of serotonin in the brain, in effect treating depression by "balanc[ing] the brain's chemistry." *Id.* Plaintiff alleges that "scientists have never found evidence to prove the 'balancing brain chemistry' theory." *Id.*

The antidepressant industry is immense, generating revenue of approximately $11 billion per

---

[1] Although originally approved by the FDA for treatment of major depressive disorder, the FDA later approved Zoloft for the treatment of "obsessive-compulsive disorder, panic disorder, post-traumatic stress disorder, premenstrual dysphoric disorder, and social anxiety disorder." Complaint ¶ 19.

2

Case No.: 13-CV-00414-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

year. *Id.* ¶ 14. Before its patent expired in 2007, Pfizer's annual sales of Zoloft were in excess of $3 billion. *Id*. ¶ 20. Over 20 million prescriptions of Zoloft or its generic sertraline are filled each year, and Plaintiff estimates Pfizer's total revenue from Zoloft since its launch at over $30 billion. *Id.*

Plaintiff alleges that despite Zoloft's commercial success, "clinical trials and studies have demonstrated time and time again that Zoloft is no better than a sugar pill in treating depression." *Id*. ¶ 21. According to the Complaint, Zoloft's efficacy as an antidepressant is due primarily to the placebo effect. *Id*. ¶ 22. That is, the reason Zoloft may be effective in treating depression is the patient's belief that the drug is effective, rather than the drug's pharmacological effects. *Id*. Plaintiff cites several studies that show antidepressants are particularly susceptible to the placebo effect. *Id*. ¶ 23. Because "there is no physiological test for determining whether a given antidepressant is working on a patient," researchers must rely on patients' subjective evaluations of the course of their depression. *Id*.

According to Plaintiff, Pfizer knew before Zoloft was approved by the FDA in 1991 that it "had an efficacy problem." *Id*. ¶ 24. When Pfizer submitted its new drug application ("NDA") to the FDA in 1990, it included six placebo-controlled clinical trials that were designed to test Zoloft's efficacy in treating depression. *Id*. ¶ 28. Of the six, two demonstrated a statistically significant effect over placebo, and four showed none. *Id*.

The FDA Psychopharmacological Drugs Advisory Committee ("PDAC") found Zoloft met the statutory requirements for approval of an NDA: that the drug be safe, and that there be "substantial evidence" of the drug's efficacy. *Id.* ¶¶ 35–38; *see also* MJOP at 4–5; 21 C.F.R. 314.126. Plaintiff quotes several statements from the PDAC meeting discussing Pfizer's NDA for Zoloft, which suggest that the evidentiary support for Zoloft's efficacy "is not as consistent or robust as one might prefer it to be." Complaint ¶ 39; *see generally id*. ¶¶ 33–40. Nevertheless, the PDAC recommended Zoloft for approval, and in 1991 the FDA approved it for the treatment of depression. *Id.* ¶¶ 39, 19.

### 2. Alleged Misrepresentations and Omissions

3

Case No.: 13-CV-00414-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

1    Plaintiff alleges that, in connection with marketing and labeling Zoloft, Pfizer made various misrepresentations and omissions which Plaintiff contends violate several California consumer protection laws. *Id*. ¶¶ 100, 108–119, 123; *see also* Opp'n at 1.

First, Plaintiff alleges that "Zoloft's drug label has never properly stated Zoloft's true efficacy or given consumers or prescribing healthcare professionals sufficient information to determine . . . if purchasing or prescribing Zoloft is worth the risks." Complaint ¶ 42. Plaintiff challenges Zoloft's drug label as misleading because it fails to "mention or discuss the numerous clinical trials in which Zoloft was shown to be no more effective in treating depression than placebo," and "to disclose that the two clinical trials that supposedly demonstrate Zoloft's efficacy showed only a marginal or slight effect on treating depression." *Id*. ¶ 44. Plaintiff contends that by omitting this "material information, Pfizer has robbed consumers and prescribing healthcare professionals of having sufficient information to properly decide whether to purchase or prescribe Zoloft." *Id*. ¶ 45.

Second, the Complaint alleges that "Pfizer has engaged in selective and biased publication of Zoloft's clinical trials with the aim of promoting favorable studies and suppressing negative ones." *Id*. ¶ 46. Plaintiff alleges Pfizer was able to prevent disclosure of unfavorable clinical results by having outwardly unbiased researchers sign non-disclosure agreements, mandating that researchers obtain Pfizer's permission before publishing any clinical data, limiting researchers' access to the raw clinical data, and placing researchers whose trials demonstrated a lack of efficacy on a "do-not-use-in-the-future" list. *Id*. ¶ 57. The effect of these practices, according to the Complaint, was to "give[] the impression that Zoloft is more effective than it actually is." *Id*. ¶ 48.

Third, Plaintiff alleges that Pfizer engaged in an extensive ghostwriting campaign to improve perceptions of Zoloft's efficacy in the scientific and medical communities. *Id*. ¶ 52. This program involved paying "key opinion leaders" to put their names on articles authored by Pfizer or its agents, articles which would then be published in targeted medical journals. *Id*. According to Plaintiff, the purpose of this program was to "promote efficacy, highlight the drug's superiority to a competitor(s), leverage good will with academic investigators, increase media and public

4

Case No.: 13-CV-00414-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

perception of the drug and Pfizer, and provide tools for sales force to drive prescriptions based on data." *Id*. ¶ 56 (internal quotation marks omitted).

Fourth, Plaintiff alleges that Pfizer directly paid "key opinion leaders" and distinguished scientists to support Zoloft, while concealing these financial relationships from the larger scientific community. *Id*. ¶ 58.

Finally, the Complaint alleges that after Pfizer obtained FDA approval of Zoloft, it embarked on a "massive [marketing] campaign to promote Zoloft as an effective and reliable treatment for depression." *Id*. ¶ 61. Plaintiff alleges that Pfizer encouraged healthcare professionals to prescribe Zoloft by providing them tickets to various theater and sporting events and paying for ski trips, stays at luxury hotels, and meals at "fancy" restaurants. *Id*. ¶ 62. Plaintiff also alleges that Pfizer sent sales representatives—"typically young attractive people"—to visit healthcare professionals and "brief" them on Zoloft's efficacy, again with the purpose of giving healthcare professionals "the impression that Zoloft was a reliable and effective medication for depression." *Id*. ¶ 63. In addition to these "direct-to-prescriber" efforts, Plaintiff alleges that Pfizer created numerous print and video advertisements to promote Zoloft, all of which "gave the false and misleading impression that Zoloft was a tremendously effective drug for the treatment of depression." *Id*. ¶ 64.

### 3. Plaintiff's Experiences

Plaintiff alleges that on or about March 18, 2005, she was prescribed a 50mg daily dose of Zoloft by her psychiatrist to treat her ongoing depression. Complaint ¶ 68. As her treatment progressed over the next four years, Plaintiff's dosage was increased to 100, 200, and 400 mg per day. *Id*. Plaintiff continued to purchase and ingest Zoloft until August 11, 2006. *Id*. Between March 18, 2005 and August 11, 2006, Plaintiff spent a total of approximately $162 to purchase Zoloft. *Id*. ¶ 71. Including both payments from Plaintiff and her insurance company, Pfizer received a total of approximately $3,315 over the same period. *Id*. After August 11, 2006 Plaintiff switched to the generic formulation of Zoloft, sertraline, which she took until June 2008. *Id*. ¶ 70.

Plaintiff alleges that before her doctor prescribed her Zoloft to treat her depression, she saw

5

Case No.: 13-CV-00414-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

several television commercials touting Zoloft's efficacy, and that after she had been prescribed Zoloft, she read its drug label. *Id.* ¶ 72. Plaintiff contends that it was on the basis of these misrepresentations and omissions about Zoloft's efficacy that she was induced into purchasing and ingesting Zoloft. *Id.* Plaintiff further alleges that her "physician was [similarly] misled into prescribing Zoloft because he had been led to believe it was more effective in treating depression that it actually is." *Id.* ¶ 69.

Plaintiff did not discover Pfizer's alleged misrepresentations and omissions regarding Zoloft's efficacy until "early 2012." *Id.* ¶ 74. During the entire period in which Plaintiff purchased and ingested Zoloft, she was unaware that "Zoloft's drug label and advertising were deceptive or that they lacked material information about the drug's efficacy." *Id.* ¶ 73. "Given the risk of the serious and well-documented side effects associated with Zoloft," had Plaintiff known "that the majority of clinical trials related to Zoloft's efficacy had shown it is no better than placebo," she would never have purchased or ingested Zoloft. *Id.* ¶ 74. "In other words, Plaintiff had relied on the sufficiency and accuracy of Pfizer's advertisements and Zoloft's drug label in making her decision to purchase and ingest Zoloft to treat her depression." *Id.*

### B. Procedural History

Plaintiff filed her Complaint on January 30, 2013. ECF No. 1. Defendant answered on February 22, 2013. ECF No. 7. On August 5, 2013, Defendant moved for judgment on the pleadings ("MJOP"), ECF No. 39. Plaintiff filed an opposition to the MJOP on December 9, 2013 ("Opp'n"), ECF No. 83, and Defendant replied on January 6, 2014 ("Reply"), ECF No. 92. Defendant accompanied its motion for judgment on the pleadings with a request that the Court take judicial notice of several FDA Labeling Change letters and the latest Zoloft label approved by the FDA on February 1, 2013. ECF No. 40. Plaintiff does not oppose this request. ECF No. 84. Plaintiff also requests that the Court take judicial notice of the Zoloft label approved on February 1, 2013 by the FDA, FDA-approved labeling for two other antidepressants, the transcript of a meeting of the FDA's Psychopharmacological Drugs Advisory Committee, a memorandum authored by a member of that committee regarding the approval of the antidepressant Celexa, and two judicial

6

decisions. *Id.* at 2-3.[2] On January 14, 2014, Plaintiff moved for leave to file a surreply, ECF No. 94, which Defendant opposed on January 27, 2014, ECF No. 94. Defendant also filed a statement of recent decision on February 4, 2014, ECF No. 100.

## II.     LEGAL STANDARDS

### A.     Rule 12(c)

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." The legal standard for Rule 12(c) is virtually identical to the standard for a motion to dismiss under Rule 12(b)(6). *See Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). A motion under either rule tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering whether the complaint is sufficient, the Court must accept as true all of the factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the Court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). While a complaint need not allege detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that

---

[2] Because all the documents of which the parties request the Court take judicial notice are matters of public record, and neither party opposes the other's requests, the Court GRANTS the parties' requests as to all documents, and has taken notice of the adjudicative facts contained therein. *See MGIC Indem. Co. v. Weisman*, 803 F.2d 500, 505 (9th Cir. 1986) (holding a court may take judicial notice of court records); *Missud v. Oakland Coliseum Joint Venture*, No. 12-02967 JCS, 2013 WL 812428, at *10 (N.D. Cal. 2013) (taking judicial notice of court orders because they are matters of public record); *In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, 590 F. Supp. 2d 1282, 1286 (C.D. Cal. 2008) (taking judicial notice of FDA-approved drug labels); *see also* Fed. R. Evid. 201(d).

7

Case No.: 13-CV-00414-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

1  a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted).

Rule 12(c) of the Federal Rules of Civil Procedure neither expressly provides for, nor bars, partial judgment on the pleadings. It is common to apply Rule 12(c) to individual causes of action. *See Moran v. Peralta Cmty. Coll. Dist.*, 825 F.Supp. 891, 893 (N.D. Cal. 1993). "Courts have discretion to grant leave to amend in conjunction with 12(c) motions, and may dismiss causes of action rather than grant judgment." *Id.*

As with a Rule 12(b)(6) motion to dismiss, a court granting judgment on the pleadings pursuant to Rule 12(c) should grant leave to amend even if no request for leave to amend has been made, unless it is clear that amendment would be futile. *Pac. W. Grp., Inc. v. Real Time Solutions, Inc.*, 321 Fed. Appx. 566, 569 (9th Cir. 2008) (mem.).

**B.   Rule 9(b)**

Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which require that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy the heightened standard under Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks and citation omitted). A plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Securities Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharmaceutical Corp.*, 927 F. Supp. 1297, 1309 (C.D. Cal. 1996). However, "intent, knowledge,

8

Case No.: 13-CV-00414-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

and other conditions of a person's mind" need not be stated with particularity, and "may be alleged generally." Fed. R. Civ. P. 9(b).

### C. Leave to Amend

If the court concludes that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted). Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III. DISCUSSION

The Complaint alleges that Pfizer violated several California consumer protection statutes by marketing and selling Zoloft as an effective treatment for depression while concealing that the majority of clinical studies show that it is no better than a placebo. Complaint ¶¶ 1, 4-5. Specifically, Plaintiff alleges violations of: (1) the Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*; (2) California's Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200, *et seq.*; and (3) California's False Advertising Law ("FAL"), California Business and Professions Code §§ 17500, *et seq. See* Complaint ¶¶ 97–104, 105–119, 120–133. Defendant seeks to dismiss Plaintiff's Complaint on a number of grounds, including that each of Plaintiff's claims is time-barred, preempted by federal law, barred by the doctrine of primary jurisdiction, and that Plaintiff lacks standing to seek injunctive relief. MJOP at 2–3. Defendant also contends that because Plaintiff failed to satisfy the CLRA's pre-suit notice requirement, she may not bring a claim for damages under that statute. *Id.* at 3. The Court will not address every one of Defendant's arguments, however, because, as discussed below, the Court

9

Case No.: 13-CV-00414-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

1   finds that each of Plaintiff's claims is time-barred and that Plaintiff has not met her burden of

2   showing that the statutes of limitations have been tolled by the delayed discovery rule. Below, the

3   Court first describes Plaintiff's causes of action under the CLRA, UCL, and the FAL, and then

4   turns to the question of whether Plaintiff's claims are barred by the relevant statutes of limitations,

5   and whether those statutes have been tolled by the delayed discovery rule.

6       **A.    The CLRA, UCL, and FAL**

7       The CLRA prohibits "'unfair methods of competition and unfair or deceptive acts or

8   practices' in transactions for the sale or lease of goods to consumers." *Daugherty v. American*

9   *Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 833 (2006) (citing Cal. Civ. Code § 1770(a)).

10  Under the CLRA, sellers can be liable for "making affirmative misrepresentations as well as for

11  failing to disclose defects in a product." *Baba v. Hewlett–Packard Co.*, No. 09-5946 RS, 2010 WL

12  2486353, at *3 (N.D. Cal. June 16, 2010). "Conduct that is 'likely to mislead a reasonable

13  consumer' . . . violates the CLRA." *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663,

14  680 (2006) (quoting *Nagel v. Twin Laboratories, Inc.*, 109 Cal. App. 4th 39, 54 (2003)). The

15  statute of limitations for actions under the CLRA is three years. Cal Civ. Code § 1783.

16      California's UCL provides a cause of action for business practices that are (1) unlawful, (2)

17  unfair, or (3) fraudulent. Cal. Bus. & Prof. Code § 17200. The UCL's coverage is "sweeping," and

18  its standard for wrongful business conduct "intentionally broad." *In re First Alliance Mortg. Co.*,

19  471 F.3d 977, 995 (9th Cir. 2006) (citing *Cel-Tech Commc'ns., Inc. v. L.A. Cellular Tel. Co.*, 20

20  Cal. 4th 163 (1999)). The unlawful prong of the UCL "borrows violations of other laws and treats

21  them as unlawful practices," which the UCL then "makes independently actionable." *Cel-Tech*

22  *Commc'ns, Inc.*, 20 Cal. 4th at 180 (internal quotation marks and citations omitted). To support her

23  theory of liability under the UCL's unlawful prong, Plaintiff relies upon Defendant's alleged

24  violations of the following California laws: Cal. Civ. Code §§ 1709, *et seq*. (fraudulent deceit); Cal.

25  Civ. Code §§ 1571, *et seq*. (fraud); Cal. U. Com. Code §§ 2313-15 (breach of express and implied

26  warranty); Cal. Bus. & Prof. Code §§ 17500, *et seq*. (FAL); and Cal. Civ. Code §§ 1750, *et seq*.

27  (CLRA). Complaint ¶ 109. A business practice violates the unfair prong of the UCL if it is contrary

28

10

Case No.: 13-CV-00414-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

1    to "established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes

2    injury to consumers which outweighs its benefits." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th

3    1457, 1473 (2006). In determining whether a business practice is unfair under this approach,

4    California courts balance the "impact on its alleged victim" against "the reasons, justifications, and

5    motives of the alleged wrongdoer." *Id.*[3] Finally, to state a cause of action under the fraud prong of

6    the UCL, "a plaintiff need not show that he or others were actually deceived or confused by the

7    conduct or business practice in question." *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1167

8    (2000). "Instead, it is only necessary to show that members of the public are likely to be deceived."

9    *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647–48 (1996). The statute of

10   limitations for actions under the UCL is four years. Cal. Bus. & Prof. Code § 17208.

11   California's FAL makes it unlawful for a business to disseminate any statement "which is

12   untrue or misleading, and which is known, or which by the exercise of reasonable care should be

13   known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. Whether an advertisement is

14   "misleading" must be judged by the effect it would have on a reasonable consumer. *Williams v.*

15   *Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008). The statute of limitations for actions

16   under the FAL is three years. Cal. Code Civ. Proc. § 338(a).[4]

17   **B.   Statute of Limitations**

18   The Court now turns to the question of whether Plaintiff's claims are barred by the relevant

19   statutes of limitations, and concludes that they are.

20   As stated above, Plaintiff's UCL claim is subject to a four-year statute of limitations. Cal.

21   Bus. & Prof. Code § 17208. Plaintiff's CLRA and FAL claims are both subject to three-year

22   statutes of limitations. Cal Civ. Code § 1783 (CLRA); Cal. Code Civ. Proc. § 338(a) (FAL). A

---

[3] The "proper definition of 'unfair' conduct against consumers is 'currently in flux' among California courts," and some appellate opinions have applied a more stringent test, particularly for conduct that threatens an incipient violation of antitrust law. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

[4] Plaintiff's causes of action under the CLRA, the fraud prong of the UCL, and the FAL all sound in fraud and are therefore all subject to the heightened pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure. *See Kearns*, 567 F.3d at 1125 ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL.").

11
Case No.: 13-CV-00414-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

United States District Court

1    threshold question is when the statutes of limitations period starts to run. Under California law,

2    "the limitations period, the period in which a plaintiff must bring suit or be barred, runs from the

3    moment a claim accrues." *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1191 (2013). The

4    "last element" accrual rule provides that absent any equitable exception, a claim accrues upon "'the

5    occurrence of the last element essential to the cause of action.'" *Id.* (quoting *Neel v. Magana,*

6    *Olney, Levy, Cathcart & Gelfand*, 6 Cal. 3d 176, 187 (1971)).

7    Here, it is clear that Plaintiff's claims under the CLRA, UCL, and FAL accrued upon her

8    purchase of Zoloft, which last occurred in June 2008. Complaint ¶ 70 ("Plaintiff purchased the

9    generic version of Zoloft, sertraline until or or about June 2008"). The CLRA, UCL, and FAL

10   proscribe misleading, false, or otherwise deceptive practices or statements in transactions for the

11   sale or lease of goods to consumers. *See* Cal. Bus. and Prof.Code § 17200; Cal. Bus. and Prof.Code

12   § 17500; Cal. Civ. Code § 1770; *see also Williams*, 552 F.3d at 938 ("[T]hese laws prohibit not

13   only advertising which is false, but also advertising which . . . is either actually misleading or

14   which has a capacity, likelihood or tendency to deceive or confuse the public.") (internal quotation

15   marks and citation omitted). Accordingly, a cause of action under each statute accrues when a

16   defendant misrepresents or omits material information regarding a product or service and a

17   consumer makes a purchase as a result of such deceptive practices. *See, e.g.*, *Ries v. Arizona*

18   *Beverages USA LLC*, 287 F.R.D. 523, 534 (N.D. Cal. 2012) (plaintiff's claims under the CLRA

19   and FAL accrued, and limitations period began to run, when consumer purchased allegedly

20   mislabeled ice tea). Here, Plaintiff alleges that she was deceived by Pfizer's advertising and

21   labeling of Zoloft as an effective treatment for depression, and that she suffered an economic injury

22   when she purchased Zoloft on the basis of Pfizer's misrepresentations and omissions. Complaint ¶¶

23   69, 71–74.[5] Plaintiff's last purchase of Zoloft or its generic equivalent was "on or about June

24   2008." Complaint ¶ 70. Accordingly, this is the last date on which Plaintiff could have suffered her

25   alleged economic injury, and the last date on which her claims could have accrued. Plaintiff

---

[5] In her opposition, Plaintiff similarly argues that her "injury [was] the deception at the point of sale." Opp'n at 23.

12
Case No.: 13-CV-00414-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

1     brought the instant action on January 30, 2013, four years and seven months *after* her claims

2     accrued. Plaintiff's delay means that by the time Plaintiff filed suit, the limitations periods for each

3     of her claims had run by at least seven months. This is because, as stated above, Plaintiff's UCL

4     claim is subject to a four-year statute of limitations, Cal. Bus. & Prof. Code § 17208, and her

5     CLRA and FAL claims are both subject to three-year statutes of limitations. Cal Civ. Code § 1783

6     (CLRA); Cal. Code Civ. Proc. § 338(a) (FAL). Accordingly, the Court concludes that Plaintiff's

7     claims are time-barred under the relevant statutes of limitations.

### C.     Delayed Discovery Rule

9     The Court now turns to the question whether the relevant statutes of limitations were tolled

10    by the "delayed discovery" rule. Plaintiff argues in opposition to Pfizer's motion that her claims are

11    not time-barred because she did not discover Pfizer's misrepresentations regarding Zoloft's

12    efficacy and "that she had been deceived" until early 2012. *See* Opp'n at 21-23. Plaintiff's

13    contention that "'the statute of limitations does not begin to run until the plaintiff discovered or had

14    notice of all facts which are essential to the cause of action'" indicates that she relies on the

15    delayed discovery rule to toll the statutes of limitations. Opp'n at 22 (quoting *In re Conseco Ins.*

16    *Co. Annuity Mktg. & Sales Practices Litig.*, No. 05-04726 RMW, 2008 WL 4544441, at *8 (N.D.

17    Cal. Sept. 30, 2008)); *see also* Opp'n at 23 (citing delayed discovery rule). However, the Court

18    concludes that because Plaintiff's Complaint pleads insufficient facts to invoke the delayed

19    discovery rule, the statutes of limitations have not been tolled, and Plaintiff's claims under the

20    CLRA, UCL, and FAL are accordingly time-barred.

21    "In California, the discovery rule postpones accrual of a claim until 'the plaintiff discovers,

22    or has reason to discover, the cause of action.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017,

23    1024 (9th Cir. 2008) (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 391 (1999)). "A plaintiff

24    whose complaint shows on its face that his claim would be barred without the benefit of the

25    discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2)

26    the inability to have made earlier discovery despite reasonable diligence. The burden is on the

27    plaintiff to show diligence, and conclusory allegations will not withstand" a motion to dismiss. *E–*

28

13
Case No.: 13-CV-00414-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

*Fab, Inc. v. Accountants, Inc. Services*, 153 Cal.App. 4th 1308, 1319 (2007) (internal quotations and citation omitted); *see also Clemens*, 534 F.3d at 1024 ("A plaintiff must affirmatively excuse his failure to discover the fraud . . . by showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry." (quoting *Bedolla v. Logan & Frazer*, 52 Cal.App. 3d 118, 129 (1975)). The delayed discovery rule is available to toll the statute of limitations under the CLRA, UCL, and FAL. *See Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1131 (C.D. Cal. 2010) (delayed discovery rule applies to CLRA and FAL claims); *Aryeh*, 55 Cal. 4th at 1196 (delayed discovery rule applies to UCL claims).[6]

Here, Plaintiff has not met her burden of pleading the time and manner of discovery, or of pleading facts that show her diligence. This is because Plaintiff's Complaint contains insufficient allegations with respect to the time and manner of her discovery of the facts—Pfizer's alleged misrepresentations and omissions—giving rise to her claims, and provides no basis for the Court to conclude she was unable to discover such facts earlier despite reasonable diligence, as explained below.

First, Plaintiff merely pleads that "[i]n early 2012, Plaintiff discovered that Pfizer had misrepresented Zoloft's efficacy, stating that it was more effective than it actually was. Plaintiff learned that the majority of clinical trials related to Zoloft's efficacy had shown it is no better than placebo." Complaint ¶ 74. This sole allegation does not reveal the time and manner of her discovery of the alleged misrepresentation other than that it was in "early 2012." *Id.* Even if such a

---

[6] The Ninth Circuit has held that claims under the UCL begin to run on the date of the defendant's violation and *not* the date of discovery. *See Karl Storz Endoscopy–Am., Inc. v. Surgical Tech., Inc.*, 285 F.3d 848, 857 (9th Cir. 2002). However, the California Supreme Court clarified recently that claims under the UCL are "governed by common law accrual rules," including delayed discovery. *Aryeh,* 55 Cal. 4th at 1196. The Ninth Circuit's interpretation of California law is "'binding in the absence of any subsequent indication from the California courts that our interpretation was incorrect,'" *Jones–Hamilton Co. v. Beazer Materials & Servs., Inc.*, 973 F.2d 688, 696 n.4 (9th Cir. 1992) (quoting *Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983)); in this case, the *Aryeh* decision is a clear indication that the Ninth Circuit was incorrect in holding that the delayed discovery rule is not available to toll the statute of limitations for claims under the UCL.

general reference to the *time* of her discovery was sufficient, pleading that she "learned" that clinical trials supposedly showed Zoloft was an ineffective treatment for depression simply repeats Plaintiff's underlying allegations and does not explain *how* she made the discovery at that time – i.e., the *manner* of her discovery.[7]

Second, Plaintiff pleads absolutely no facts that would support a finding that she was "not negligent in failing to make the discovery sooner and that [s]he had no actual or presumptive knowledge of facts sufficient to put [her] on inquiry." *Clemens*, 534 F.3d at 1024 (internal quotations and citation omitted). To the contrary, the Complaint identifies and relies upon several published articles regarding the efficacy of Zoloft and other related drugs that were published many years before Plaintiff filed suit. *See* Complaint ¶¶ 23, 46, 48, 54 (discussing articles published 3, 4, 5, 10, and 11 years before Plaintiff brought the instant suit). Plaintiff does not explain why she was unaware of these publications before "early 2012" when she allegedly discovered the misrepresentation for the first time, nor explains why these publications did not serve to put her on notice that Defendant may have made misrepresentations about Zoloft's efficacy. Furthermore, nothing in the Complaint provides the Court a basis to conclude that Plaintiff was unable to learn of Pfizer's alleged misrepresentations and omissions until 2012 *despite reasonable diligence*. Plaintiff does not allege that she took *any* steps towards discovery. *See Cabrerra v. Countrywide Financial*, No. C 11-4869, 2012 WL 5372116, at *6 (N.D. Cal. Oct. 30, 2012) (holding that plaintiff's UCL claims based on alleged misrepresentation were barred by the statute of limitations because plaintiffs "fail to allege sufficient facts to show that they were unable to discover the interest rate despite reasonable diligence"); *Coward v. JP Morgan Chase Bank, Nat'l Ass'n*, No. 2:11-03378-GEB-DAD, 2012 WL 1552773, at *5 (N.D. Cal. Apr. 30, 2012) (holding that allegations that "it was not until 2010 that Plaintiff discovered [the misrepresentation]" and that

---

[7]The Court notes that Plaintiff's opposition does not provide further illumination on this point either. Plaintiff simply states, "These allegations show that Plaintiff was unaware of Pfizer's deception until early 2012. It follows, thus, that there was no way for Plaintiff to have known she was injured until the information she was deprived of was made known to her. . . . Plaintiff had no idea she had been misled until early 2012." Opp'n at 23.

15
Case No.: 13-CV-00414-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND

1  "any applicable statutes of limitation have been tolled by Defendants' continuing, knowing, and
2  active concealment of the facts" were insufficient to show delayed discovery).

3  In her opposition, Plaintiff cites *In re Conseco*, 2008 WL 4544441, in support of her
4  contention that the delayed discovery rule should apply to toll the limitations period for her claims.
5  Opp'n at 22. Plaintiff's reliance on *In re Conseco* fails. Plaintiff fails to note that the *In re Conseco*
6  court found that the plaintiff had adequately alleged facts to invoke the delayed discovery rule by
7  pleading both (1) the time and manner of discovery; and (2) the inability to have made an earlier
8  discovery despite reasonable diligence. 2008 WL 4544441, at *8. The plaintiff there pleaded the
9  time and manner of discovery by alleging that he had not learned that the annuity he purchased was
10 materially different than what the defendant had represented "until after the annuity had been sold
11 and the penalties accrued." *Id*. The plaintiff had also specifically alleged that because the annuity's
12 disclosures were "drafted in indecipherable and opaque mathematical terms," a reasonable person
13 could not have otherwise discovered the defendant's misrepresentations until penalties accrued
14 upon sale of the annuity. *Id*.

15 Invocation of the discovery rule requires more than simply alleging that discovery was
16 delayed. *See Fox v. Ethicon Endo-Surgery, Inc*., 35 Cal. 4th 797, 808 (2005) ("In assessing the
17 sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to
18 'show diligence'; 'conclusory allegations will not withstand [a motion to dismiss].'") (internal
19 quotation marks and citation omitted). Plaintiff's conclusory allegations that she did not discover
20 Pfizer's alleged misrepresentations and omissions until "early 2012" is thus insufficient to establish
21 her diligence and to toll the statutes of limitations for her claims. Because Plaintiff has failed to
22 meet her burden to adequately plead facts supporting equitable tolling under the discovery rule, the
23 Court finds that Plaintiff's claims under the CLRA, UCL, and FAL are time-barred.

24 Accordingly, the Court GRANTS Defendant's motion for judgment on the pleadings.
25 However, because Plaintiff may be able to correct the deficiencies in her delayed discovery

allegations,[8] and because none of the conditions in *Leadsinger* have been met in this case, the Court dismisses Plaintiff's Complaint with leave to amend.[9]

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion for judgment on the pleadings without prejudice.[10] Should Plaintiff elect to file a First Amended Complaint curing the deficiencies discussed herein, she shall do so within 21 days of the date of this Order. Failure to meet the 21–day deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice. Plaintiff may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

Because this Order dismisses Plaintiff's Complaint, the Court DENIES AS MOOT Plaintiff's pending motion for class certification without prejudice, ECF No. 43, DENIES AS MOOT Defendant's motion to enlarge time for briefing and hearing of Plaintiff's motion for class certification, ECF No. 101, and DENIES AS MOOT the parties' joint stipulation and proposed order granting Plaintiff's motion for leave to exceed page limitations in its class certification briefing, ECF Nos. 30 and 31.

**IT IS SO ORDERED.**

Dated: February 21, 2014

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

---

[8] Plaintiff states in her opposition that should the Court grant Defendant's motion on time-barred grounds, "such deficiencies could be cured through amendment. Plaintiff could provide the (1) circumstances of her discovery; (2) specify whether she was ever made aware of any of the various publications cited in Plaintiff's Complaint; and explain what steps Plaintiff took following her discovery to bring this action to Court." Opp'n at 23 n.11.

[9] The Complaint also alleges a national issue and injunctive relief class, and in Count I seeks declaratory relief on behalf of that class. Complaint ¶¶ 75-85, 93–94, 138. Plaintiff now seeks to "remov[e] the national issue and injunctive relief allegations" and to limit its prayer for declaratory relief to California consumer protection laws. Opp'n at 9. Because the Complaint is dismissed with leave to amend, Plaintiff's request for leave to amend the Complaint in this manner is GRANTED.

[10] Because Plaintiff's motion for leave to file a surreply, ECF No. 94, does not bear on whether her claims are time-barred, Plaintiff's motion is DENIED as moot.

17
Case No.: 13-CV-00414-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND