1   Christopher L. Coffin (*pro hac vice*)
    ccoffin@pbclawfirm.com
2   Nicholas R. Rockforte (*pro hac vice*)
    nrockforte@pbclawfirm.com
3   David M. Hundley (*pro hac vice*)
    dhundley@pbclawfirm.com
4   PENDLEY, BAUDIN & COFFIN, L.L.P.
    1515 Poydras St., Suite 1400
5   New Orleans, LA 70112
    Telephone:  (504) 355-0086
6
7   S. Samuel Griffin (*pro hac vice*)
    attyinatl@gmail.com
8   LAW OFFICE OF S. SAMUEL GRIFFIN
    1130 Piedmont Ave, N.E.,
9   Suite 908
    Atlanta, GA 30309
10  Telephone:  (404) 683-1915
11  Attorneys for Plaintiff and Putative Class

    Juli E. Farris (SBN: 141716)
    jfarris@kellerrohrback.com
    Khesraw Karmand (SBN: 280272)
    kkarmand@kellerrohrback.com
    KELLER ROHRBACK L.L.P.
    1129 State Street, Suite 8
    Santa Barbara, California 93101
    Telephone:  (805) 456-1496

    Michael D. Woerner (*pro hac vice*)
    mwoerner@kellerrohrback.com
    Gretchen Freeman Cappio (*pro hac vice*)
    gcappio@kellerrohrback.com
    Benjamin Gould (SBN: 250630)
    bgould@kellerrohrback.com
    Alison Gaffney (*pro hac vice*)
    agaffney@kellerrohrback.com
    KELLER ROHRBACK L.L.P.
    1201 Third Avenue, Suite 3200
    Seattle, Washington 98101
    Telephone:  (206) 623-1900

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| LAURA A. PLUMLEE, an individual, on behalf of herself and all other persons similarly situated,<br><br>                                   Plaintiff,<br><br>       v.<br><br>PFIZER, INC.,<br><br>                                   Defendant. | No. 13-CV-0414-LHK<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Judge:  Lucy H. Koh<br>Date:  August 28, 2014<br>Time:  1:30 p.m.<br>Courtroom:  8, 4th Floor<br>United States Courthouse<br>280 South First Street, San Jose, CA 95113 |

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................... 1

II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY................................ 2

III.  LEGAL STANDARD ......................................................................... 4

IV.  ARGUMENT ................................................................................... 4

    A.   Plumlee's Allegations Are Sufficient to Toll the Accrual of Her Claims............ 4

         1.   Plumlee has pleaded her inability to have made an earlier discovery despite reasonable diligence.................................. 5

    B.   Plumlee's Claims Are Not Preempted Because Pfizer Can Comply with Both State and Federal Law. .................................................... 9

         1.   *Buckman* does not preempt Plumlee's claims because she alleges that Pfizer deceived consumers, not the FDA........................ 9

         2.   Under *Wyeth*, Plumlee's challenge to Pfizer's labeling and advertising is not preempted. ........................................ 10

    C.   The FDA Allows Pfizer to Provide Complete and Accurate Information, Depriving It of Its Safe Harbor Defense. ..................................... 15

    D.   Referral to the FDA under the Primary Jurisdiction Doctrine is Unwarranted. ................................................................. 19

    E.   Plumlee Has Suffered an Injury-in-Fact: Economic Harm from Purchasing a Product Based on Misrepresentations. ................................... 20

    F.   Plumlee Has Standing to Seek Injunctive Relief. ........................... 22

    G.   Plumlee Complied with the CLRA Notice Requirement by Amending Her Complaint. ................................................................. 24

V.   CONCLUSION ............................................................................. 25

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Aguayo v. U.S. Bank*,
   653 F.3d 912 (9th Cir. 2011) ............................................................. 9

*Alvarez v. Chevron Corp.*,
   656 F.3d 925 (9th Cir. 2011) ............................................................ 18

*Alvarez v. Chevron Corp.*,
   No. 09-3343, 2009 WL 5552497 (C.D. Cal. Sept. 30, 2009) ........................... 19

*Ang v. Bimbo Bakeries USA, Inc.*,
   No. 13-01196, 2013 WL 5407039 (N.D. Cal. Sept. 25, 2013) ......................... 25

*Antonick v. Elec. Arts Inc.*,
   No. 11-01543, 2011 WL 4501324 (N.D. Cal. Sept. 27, 2011) ......................... 7

*Arroyo v. Plosay*,
   170 Cal. Rptr. 3d 125 (Ct. App. 2014) ................................................ 7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................... 4

*Astiana v. Ben & Jerry's Homemade, Inc.*,
   No. 10-4387, 2011 WL 2111796 (N.D. Cal. May 26, 2011) ............................ 24

*AutoZone, Inc. v. Glidden Co.*,
   737 F. Supp. 2d 936 (W.D. Tenn. 2010) ................................................ 3

*Barnes v. Campbell Soup Co.*,
   No. 12-05185, 2013 WL 5530017 (N.D. Cal. July 25, 2013) ......................... 22

*Begley v. Bristol-Myers Squibb Co.*,
   Nos. 06-6051, 06-6269, 2009 WL 5216967 (D.N.J. Dec. 30, 2009) ................... 16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................... 4

*Bober v. Glaxo Wellcome PLC*,
   246 F.3d 934 (7th Cir. 2001) .......................................................... 16

*Bronson v. Johnson & Johnson, Inc.*,
   No. 12-04184, 2013 WL 1629191 (N.D. Cal. Apr. 16, 2013) ......................... 24

*Brown v. MCI WorldCom Network Servs., Inc.*,
   277 F.3d 1166 (9th Cir. 2002) ........................................................ 19

*Bruton v. Gerber Prods. Co.*,
   961 F. Supp. 2d 1062 (N.D. Cal. 2013) ........................................... 16, 19

*Buckman Co. v. Plaintiffs' Legal Comm*,
    531 U.S. 341 (2001) ............................................................................ 9

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ...................................................................... 15

*Chavez v. Blue Sky Natural Beverage Co.*,
    268 F.R.D. 365 (N.D. Cal. 2010) ...................................................... 16

*Clark v. Time Warner Cable*,
    523 F.3d 1110 (9th Cir. 2008) ........................................................... 19

*Council of Ins. Agents & Brokers v. Molasky-Arman*,
    522 F.3d 925 (9th Cir. 2008) ............................................................. 20

*Danvers Motor Co., v. Ford Motor Co.*,
    432 F.3d 286 (3d Cir. 2005) .............................................................. 20

*Delarosa v. Boiron, Inc.*,
    818 F. Supp. 2d 1177 (C.D. Cal. 2011) ............................................. 16

*DePriest v. AstraZeneca Pharm., L.P.*,
    351 S.W.3d 168 (Ark. 2009) .............................................................. 17

*Doe v. United States*,
    419 F.3d 1058 (9th Cir. 2005) ............................................................. 4

*E-Fab, Inc. v. Accountants, Inc. Servs.*,
    153 Cal. App. 4th 1308 (2007) ............................................................ 5

*English v. Gen. Elec. Co.*,
    496 U.S. 72 (1990) ............................................................................... 9

*Erickson v. Pardus*,
    551 U.S. 89 (2007) ............................................................................... 4

*Fed. Hous. Fin. Agency v. City of Chicago*,
    962 F. Supp. 2d 1044 (N.D. Ill. 2013) ................................................ 3

*Forst v. Smithkline Beecham Corp.*,
    639 F. Supp. 2d 948 (E.D. Wis. 2009) .............................................. 12

*Gaeta v. Perrigo Pharm. Co.*,
    630 F.3d 1225 (9th Cir. 2011) ........................................................... 13

*Gustavson v. Wrigley Sales Co.*,
    961 F. Supp. 2d 1100 (N.D. Cal. 2013) .........................................9, 18

*Henderson v. Gruma Corp.*,
    No. 10-04173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) .......23, 24

*Hinojos v. Kohl's Corp.*,
    718 F.3d 1098 (9th Cir. 2013) ............................................................21, 22

*In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, --- F. App'x ----,
    No. 13-3463, 2014 WL 1647658 (3d Cir. Apr. 25, 2014)................................. 22

*In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*,
    No. 05-1699, 2006 WL 2374742 (N.D. Cal. Aug. 16, 2006) ........................... 14

*In re Celexa & Lexapro Mktg. & Sales Practices Litig.*,
    MDL No. 09–2067, No. 13-11343, 2014 WL 866571 (D. Mass. Mar. 5, 2014)...........17, 18

*In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*,
    MDL No. 08-1934, 2009 WL 1703285 (C.D. Cal. June 17, 2009) ...................... 14

*In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*,
    955 F. Supp. 2d 1311 (S.D. Fla. 2013) .............................................. 15

*Irving v. Lennar Corp.*,
    No. 12-0290, 2014 WL 68961 (E.D. Cal. Jan. 8, 2014)................................. 7

*Janda v. T-Mobile, USA, Inc.*,
    No. 05-03729, 2008 WL 4847116 (N.D. Cal. Nov. 7, 2008) ........................... 24

*Jolly v. Eli Lilly & Co.*,
    44 Cal. 3d 1103 (1988) .............................................................. 8

*Krueger v. Wyeth, Inc.*,
    No. 03-2496, 2011 WL 8971449 (S.D. Cal. Mar. 30, 2011) ........................... 22

*Krzykwa v. Campbell Soup Co.*,
    946 F. Supp. 2d 1370 (S.D. Fla. 2013) .............................................. 18

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) .........................................................20, 21, 22

*Lanovaz v. Twinings N. Am., Inc.*,
    No. 12-02646, 2014 WL 46822 (N.D. Cal. Jan. 6, 2014) ............................. 23

*Ledwick v. AstraZeneca Pharm., LP*,
    No. BC 324 518 (Cal. Super. Ct., L.A. Cnty., Sept. 21, 2005)........................ 17

*Lefaivre v. KV Pharm. Co.*,
    636 F.3d 935 (8th Cir. 2011) ....................................................... 10

*Lockwood v. Conagra Foods, Inc.*,
    597 F. Supp. 2d 1028 (N.D. Cal. 2009)............................................... 20

*Lynch v. Tropicana Prods., Inc.*,
    No. 11-07382, 2013 WL 2645050 (D.N.J. June 12, 2013) ............................. 18

*Mangini v. Aerojet-General Corp.*,
   230 Cal. App. 3d 1125 (1991) .................................................................. 5

*Mason v. SmithKline Beecham Corp.*,
   596 F.3d 387 (7th Cir. 2010) .................................................................. 13

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470 (1996) .................................................................................. 9

*Migliori v. Boeing N. Am., Inc.*,
   97 F. Supp. 2d 1001, 1011 (C.D. Cal. 2000))), *reconsideration denied*, 2014 WL
   1573552 (E.D. Cal. Apr. 17, 2014) ........................................................... 7

*Mut. Pharm. Co., Inc. v. Bartlett*,
   133 S. Ct. 2466 (2013) ............................................................................ 15

*Nelson v. Indevus Pharm., Inc.*,
   142 Cal. App. 4th 1202 (2006) ..........................................................6, 7, 8

*Norgart v. Upjohn Co.*,
   21 Cal. 4th 383 (1999) .............................................................................. 4

*Ogden v. Bumble Bee Foods, LLC*,
   No. 12-01828, 2014 WL 27527 (N.D. Cal. Jan. 2, 2014) ...........................21, 24

*Ohkubo v. Antara Biosciences, Inc.*,
   364 F. App'x 340 (9th Cir. 2010) .............................................................. 3

*Ortega v. Natural Balance Inc.*,
   No. 13-05942, 2013 WL 6596792 (C.D. Cal. Dec. 16, 2013).......................... 23

*Pa. Emp. Benefit Trust Fund v. Zeneca, Inc.*,
   No. 05-075, 2005 WL 2993937 (D. Del. Nov. 8, 2005) ............................... 14

*Pa. Emps. Ben. Trust Fund v. Zeneca Inc.*,
   556 U.S. 1101 (2009) ............................................................................... 15

*Perez v. Nidek Co., Ltd.*,
   711 F.3d 1109 (9th Cir. 2013) .................................................................. 9

*Pratt v. Whole Foods Market Cal., Inc.*,
   No. 12–05652, 2014 WL 1324288 (N.D. Cal. Mar. 31, 2014)........................ 23

*Prohias v. Pfizer, Inc.*,
   490 F. Supp. 2d 1228 (S.D. Fla. 2007)....................................................14, 17

*Ries v. Ariz. Beverages USA LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012) ............................................................. 23

*Rikos v. Procter & Gamble Co.*,
  782 F. Supp. 2d 522 (S.D. Ohio 2011) ............................................................... 20

*Saavedra v. Eli Lilly & Co.*,
  No. 12-9366, 2013 WL 6345442 (C.D. Cal. Feb. 26, 2013) .......................... 10, 20

*Samet v. Procter & Gamble Co.*,
  No. 12-01891, 2013 WL 3124647 (N.D. Cal. June 18, 2013) ............................ 18

*State v. Eli Lilly & Co.*,
  No. 2007-CP-42-1855, 2009 WL 6058384, slip op. (S.C.Com.Pl., Spartanburg Cnty.,
  Sept. 22, 2009) ................................................................................................... 16

*Tavares v. Capitol Records, LLC*,
  No. 12-3059, 2013 WL 968272 (N.D. Cal. Mar. 12, 2013) ................................. 8

*United States v. Skinna*,
  931 F.2d 530 (9th Cir. 1990) ............................................................................... 9

*United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*,
  412 U.S. 669 (1973) ............................................................................................ 20

*Unruh-Haxton v. Regents of Univ. of Cal.*, 162 Cal. App. 4th 343 (2008) ................................ 7

*Wolfe v. McNeil-PPC, Inc.*,
  773 F. Supp. 2d 561 (E.D. Pa. 2011) ................................................................. 12

*Wyeth v. Levine*,
  555 U.S. 555 (2009) ....................................................................................passim

**Statutes and Regulations**

16 C.F.R. § 306.12(d) ....................................................................................... 18

21 C.F.R. § 202.1(e)(1) ..................................................................................... 13

21 C.F.R. § 314.70(c)(6)(iii) ............................................................................. 11

21 C.F.R. § 314.70(c)(6)(iii)(D) ....................................................................... 11

21 U.S.C. § 355(d) ............................................................................................ 12

Cal. Bus. & Prof. Code § 17204 ....................................................................... 20

Cal. Civ. Code § 1782(a) .................................................................................. 24

1

**<u>Rules</u>**

Fed. R. Civ. P. 8 ................................................................................................................. 4

Fed. R. Civ. P. 8(a)(2) ....................................................................................................... 4

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 4

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.   INTRODUCTION

Pfizer is right about one thing: "If a product causes harm, does not work, *or is not as represented*, a consumer may seek redress through the courts." Mot. to Dismiss First Am. Compl., ECF No. 130 ("MTD") at 25 (emphasis added). By omitting material information about Zoloft's efficacy, Pfizer sold a product that was not as represented. Under California law, therefore, Plaintiff Laura Plumlee has stated claims that are valid on their face, and Pfizer's arguments to the contrary should be rejected.

First, Pfizer renews its argument that Plumlee's claims are untimely. MTD at 6-8. The First Amended Complaint, says Pfizer, fails to allege that Plumlee was diligent, and hence fails to satisfy California's delayed discovery rule. Pfizer's argument, however, depends on an erroneous assumption about what constitutes diligence under California law. Pfizer assumes that simply because Plumlee took Zoloft and Zoloft did not successfully treat her depression, she had an obligation to affirmatively seek out information about the drug. That, however, is a diligence standard that California courts have expressly rejected.

Pfizer also asserts that Plumlee's claims are preempted or barred by the "safe harbor" doctrine, arguing that the Food and Drug Administration ("FDA") approval of Zoloft allows Pfizer to violate California's consumer protection laws. MTD at 9-16. This argument contradicts the Supreme Court's holding in *Wyeth v. Levine*, 555 U.S. 555 (2009), which affirmed that "federal labeling requirements create a floor, not a ceiling, for state regulation." *Id.* at 563 (citation omitted). Plumlee, moreover, does not challenge whether Zoloft was properly approved by the FDA. The FDA's approval, after all, is not equivalent to a ringing endorsement of the drug's efficacy. The FDA standards set a fairly low threshold for efficacy: two clinical trials with statistically significant results, regardless of how many trials fail to demonstrate efficacy. FDA approval merely gave Pfizer the right to sell Zoloft in the United States. Once Pfizer began marketing Zoloft in California, it was obliged to follow the state's consumer

protections laws, including those laws' prohibitions against omitting or misrepresenting information that a reasonable consumer would find important.

Pfizer's other major argument is that because Zoloft was not wholly ineffective, Plumlee lacks both standing under Article III and valid claims under California law. MTD at 19-23. Once again, Pfizer gets the law wrong. As the California Supreme Court and the Ninth Circuit have held, a consumer who purchases a product based on material misrepresentations and omissions has suffered an actionable injury. And here, information about a drug's efficacy is critical to the risk-benefit analysis that a consumer and prescriber engage in when deciding whether to follow a particular course of treatment. It follows that information about a prescription drug's efficacy is material information under California law—i.e., information important to a reasonable consumer in making a decision.

Pfizer's remaining arguments—that the FDA has "primary jurisdiction" over Plumlee's claims, that Plumlee lacks standing to seek injunctive relief, and that she has failed to comply with the California Consumer Legal Remedies Act's notice requirement—are similarly meritless and should also be rejected. Pfizer's motion to dismiss should be denied.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 1991, the FDA approved Zoloft, which is generically known as sertraline, for the treatment of depression. As part of its application for approval, Pfizer submitted five placebo-controlled clinical trials (Studies 101, 103, 104, 310, and 315). First Am. Compl. ("Compl") ¶ 36, ECF No. 116. In Studies 101 and 310, Zoloft was less effective than the placebo. *Id.* ¶¶ 38-39. Study 315 evaluated Zoloft compared to placebo and an older antidepressant, amitriptyline. While amitriptyline was significantly more effective than the placebo, Zoloft was not. *Id.* ¶ 40. Study 103 evaluated Zoloft at three dosages, 50 mg, 100 mg, and 200 mg. Zoloft was only statistically superior to placebo at the lowest dosage. *Id.* ¶ 42. In Study 104, Zoloft was statistically superior to placebo. *Id.* ¶ 43. These last two studies, 103 and 104, were deemed sufficient to satisfy FDA regulatory requirements, although the FDA Advisory Committee

debated the question of Zoloft's efficacy extensively. *Id.* ¶¶ 48-60. Furthermore, since Zoloft's approval, Pfizer has conducted additional studies that have also failed to establish Zoloft's clinical efficacy. *Id.* ¶ 73.

Pfizer's data on efficacy is material information to anyone considering taking Zoloft. Despite knowing the full picture,[1] Pfizer chose not to disclose it, instead including only the positive studies on Zoloft's label, and aggressively promoting Zoloft as effective treatment for depression. *See id.* ¶¶ 63-70, 87-96. This strategy worked for Pfizer—Zoloft has been a huge commercial success. *Id.* ¶ 23. However, by omitting material information about its product in its marketing and sale of Zoloft in California, Pfizer violated California consumer protection laws.

Plumlee purchased brand-name and generic Zoloft between 2005 and 2008. *Id.* ¶¶ 98-99. While Zoloft did not help her depression, she, in reliance on the Zoloft label, concluded that Zoloft merely did not work for her personally. *Id.* ¶ 103. At no time did Pfizer's representations about Zoloft in its label, advertising, or promotional materials disclose the material information about Zoloft's questionable efficacy. *Id.* ¶¶ 102, 107. Nor did Plumlee's prescriber ever tell her about Zoloft's inability to outperform a placebo. *Id.* ¶ 111. It was only in May 2012, when she saw a *60 Minutes* report on antidepressants, that she first saw any information suggesting that any antidepressant (let alone Zoloft) might be ineffective. *Id.* ¶ 108.

Plumlee initiated this action on January 30, 2013. ECF No. 1. The Court granted Pfizer's Motion for Judgment on the Pleadings on February 21, 2014, with leave to amend. ECF No. 105. Plumlee filed

---

[1] In its responses to Plaintiff's Requests for Admissions, Pfizer has admitted "at the time Pfizer was engaged in direct-to-consumer advertising for Zoloft that Pfizer was aware of clinical trial data that for various reasons, including but not limited to study design, did not demonstrate Zoloft's efficacy in treating depression for certain patient populations and at certain doses," and that Pfizer took actions to market the drug as effective. Pfizer Inc.'s Responses and Objections to Pl.'s First Set of Requests for Admission, Decl. of Michael D. Woerner in Supp. of Opp. to Mot. to Dismiss, Ex. C, at 45, 48. Responses to requests for admissions are binding admissions and thus may be considered on a motion to dismiss. *See, e.g.*, *Ohkubo v. Antara Biosciences, Inc.*, 364 F. App'x 340, 341 (9th Cir. 2010) (considering binding judicial admission on motion to dismiss); *Fed. Hous. Fin. Agency v. City of Chicago*, 962 F. Supp. 2d 1044, 1051 n.6 (N.D. Ill. 2013) (same); *AutoZone, Inc. v. Glidden Co.*, 737 F. Supp. 2d 936, 942 (W.D. Tenn. 2010) (same).

her First Amended Complaint on March 12, 2014, ECF No. 115, and her Substituted Amended

Complaint on March 13, 2014, ECF No. 116, which Pfizer moved to dismiss on March 31, 2014. ECF

No. 130. Plumlee opposes that motion for the reasons set forth below.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 8 requires that a complaint present "a short and plain statement

of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss

under Rule 12(b)(6) should be denied if the complaint contains "sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *Iqbal* and *Twombly* do not impose a

"probability requirement." *Iqbal*, 556 U.S. at 678. Rather, a complaint states a plausible claim for relief

if the factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* On this motion, the Court "must construe the complaint in the light most

favorable to the plaintiff, taking all her allegations as true and drawing all reasonable inferences from

the complaint in her favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). To comply with

the notice pleading requirements, "[s]pecific facts are not necessary; the statement need only 'give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*,

551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). Under these standards, Plumlee has

plausibly alleged all the elements of her claims.

### IV.   ARGUMENT

**A.    Plumlee's Allegations Are Sufficient to Toll the Accrual of Her Claims.**

California's discovery rule postpones a claim's accrual until "the plaintiff discovers, or has

reason to discover, the cause of action." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999). A plaintiff

who invokes California's discovery rule must plead "'(1) the time and manner of discovery and (2) the

inability to have made earlier discovery despite reasonable diligence.'" Order at 13, Feb. 21, 2014, ECF No. 105 (quoting *E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308, 1319 (2007)).

The Complaint amply satisfies both requirements, and indeed, Pfizer does not argue that the Complaint fails to satisfy the first requirement. It argues only that the second is not satisfied. Its arguments, however, rely on a legal standard for diligence that California courts have rejected.

### 1. Plumlee has pleaded her inability to have made an earlier discovery despite reasonable diligence.

The discovery rule requires plaintiffs to plead "why, in the exercise of reasonable diligence, they could not have made the discovery sooner" than they did. *Mangini v. Aerojet-General Corp.*, 230 Cal. App. 3d 1125, 1151 (1991). Here, Plumlee has explained in detail why, in the exercise of reasonable diligence, she could not have made her discovery sooner.

In her Amended Complaint, Plumlee explains that while Zoloft did not help her depression, she concluded that Zoloft did not work for *her*, and that, relying on the Zoloft label, which did not mention any negative clinical trials, she had no reason to suspect that Pfizer had misrepresented Zoloft's overall clinical efficacy. Compl. ¶ 103. She also explains that before May 2012, when she watched a *60 Minutes* segment on antidepressants, she had not seen any information suggesting that any antidepressant might be ineffective, *id.* ¶ 108, let alone "any media, journal articles, press releases, websites, letters, or statements concerning *Zoloft* and its ability to outperform placebo in treating depression," *id.* ¶ 104 (emphasis added). That Plumlee would not seek out such information on her own is hardly surprising, since Pfizer did not disclose information about Zoloft's lack of efficacy compared to a placebo, nor did Plumlee's provider ever relay that information to her. *Id.* ¶¶ 102, 107, 111. In addition, Plumlee, as a layperson, did not have a subscription to the medical journals that contained this information about Zoloft. *Id.* ¶ 107.

According to Pfizer, however, these allegations are inadequate to plead Plumlee's diligence. The allegations are inadequate, says Pfizer, because they do not allege that Plumlee took any "affirmative"

steps to discover Zoloft's clinical inefficacy before she saw the *60 Minutes* segment. MTD at 8. But this argument assumes that the discovery rule's diligence standard requires Plumlee to seek out information on Zoloft that Pfizer has concealed. This assumption is false. Indeed, it directly conflicts with California law.

Pfizer ignores the leading case on this issue, *Nelson v. Indevus Pharm., Inc.*, 142 Cal. App. 4th 1202 (2006). There, plaintiff Nelson sued the maker of the prescription diet drug Redux, alleging that Redux had given her valvular heart disease. *Id.* at 1204. Nelson had stopped taking the drug in early 1997, but filed suit in July 2003. *Id.* The defendant argued the claim was time-barred under a two-year statute of limitations. It made two main arguments. First, the defendant argued, Nelson was put on notice by the intermittent heart palpitations, fatigue, and dizziness she experienced while taking Redux. *Id.* at 1210. Second, "television and newspaper coverage" beginning in mid-1997 about the "connection between Redux and other Fen-phen drugs and heart disease" should have alerted her to her claim. *Id.* at 1205. *Nelson* rejected both of these arguments. As to the first argument, it held that "symptoms do not, in and of themselves, suggest a drug side-effect," and also noted that while Nelson had "never asked a doctor whether those symptoms were related to Redux," neither did her doctors tell her that she was experiencing heart disease or that the symptoms "were connected to Fen-phen drugs." *Id.* at 1211. As to the second argument, the court forcefully rejected the notion that Nelson had an obligation to seek out information about a drug she was taking:

> Indevus's argument amounts to a contention that, having taken a prescription drug, Nelson had an obligation to read newspapers and watch television news and otherwise seek out news of dangerous side effects not disclosed by the prescribing doctor, or indeed by the drug manufacturer, and that if she failed in this obligation, she could lose her right to sue. We see no such obligation.

*Nelson*, 142 Cal. App. 4th at 1208. The court, based on the discovery rule case law, concluded that the limitations period begins to run not "when the effects of a drug are publicized," but "when an individual plaintiff has reason to suspect that she has been harmed." *Id.* at 1210. In this conclusion, *Nelson* is joined

by other decisions from California state and federal courts. *See Unruh-Haxton v. Regents of Univ. of Cal.*, 162 Cal. App. 4th 343, 364 (2008) (reversing the trial court's "ruling that public awareness of a problem through media coverage alone creates constructive suspicion for purposes of discovery"); *Antonick v. Elec. Arts Inc.*, No. 11-01543, 2011 WL 4501324, at *7 n.9 (N.D. Cal. Sept. 27, 2011) (holding that news article did not put plaintiff on notice, and noting that "under California law, the statute of limitations does not begin to run when some members of the public have a suspicion of wrongdoing, but only once the plaintiff has a suspicion of wrongdoing." (internal quotation marks and citation omitted)); *see also Irving v. Lennar Corp.*, No. 12-0290, 2014 WL 68961, at *7 (E.D. Cal. Jan. 8, 2014) ("Even assuming it is proper for this court to take judicial notice of the news articles defendants have provided, they do not defeat plaintiffs' reliance on delayed discovery, because '[t]he mere fact of publicity . . . does not conclusively show that a plaintiff must be imputed with knowledge.'" (quoting *Migliori v. Boeing N. Am., Inc.*, 97 F. Supp. 2d 1001, 1011 (C.D. Cal. 2000))), *reconsideration denied*, 2014 WL 1573552 (E.D. Cal. Apr. 17, 2014).

*Nelson* and the related case law defeats Pfizer's argument that Zoloft's inability to cure Plumlee's depression should have put her on notice of her claim. Just as symptoms do not themselves suggest a drug side effect, *Nelson*, 142 Cal. App. 4th at 1211, so Zoloft's inability to cure Plumlee's depression does not itself suggest that Zoloft is clinically ineffective. And as Nelson's doctors did not tell her that her symptoms were related to Redux, *id.*, so Plumlee's doctors did not tell her that Zoloft did not work for her because it is unable to outperform a placebo. Thus, the mere fact that Zoloft did not work for Plumlee did not put her on notice of her consumer claim—especially since her claim is based not on Zoloft's failure to cure her depression, but on Pfizer's misrepresentations about Zoloft's effectiveness. *See Arroyo v. Plosay*, 170 Cal. Rptr. 3d 125, 136-37 (Ct. App. 2014) (notice of one type of wrongdoing does not give a plaintiff notice of an entirely different kind of wrongdoing).

*Nelson* and its progeny also defeat Pfizer's argument that public information about Zoloft's negative clinical trials—found on websites, books, and media—put Plumlee on notice of her claim.[2] While that public information may have placed other members of the public on notice, it did not put Plumlee on notice: "The statute of limitations does not begin to run when some members of the public have a suspicion of wrongdoing, but only 'once the plaintiff *has* a suspicion of wrongdoing.'" *Nelson*, 142 Cal. App. 4th at 1206 (quoting *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111 (1988)). Nor did "diligence" require Plumlee to seek out public information: simply because she had "taken a prescription drug" did not mean that she "had an obligation to read newspapers and watch television news and otherwise seek out news of" Zoloft's ineffectiveness. *Id.* at 1208. Even less did she have an obligation to seek out medical journals to review studies of Zoloft.

Pfizer's position is made even more implausible by the nature of Plumlee's claim. The whole point of Plumlee's claim is that Pfizer did not disclose Zoloft's clinical ineffectiveness. It is somewhat offensive—and it is certainly contrary to the law—for Pfizer now to claim that Plumlee should have looked behind its misrepresentations to discover the truth. *See Tavares v. Capitol Records, LLC*, No. 12-3059, 2013 WL 968272, at *2 (N.D. Cal. Mar. 12, 2013) ("[W]here the allegations of the complaint indicate that plaintiffs were prevented from learning the true facts by defendant's misrepresentations, application of the delayed discovery rule is particularly appropriate." (citing cases)).

At most, Pfizer has created a question of fact on whether Plumlee's claims are time-barred. *See Jolly*, 44 Cal. 3d at 1112 ("[R]esolution of the statute of limitations issue is normally a question of fact."). Because Pfizer has not shown as a matter of law that Plumlee's claims are time-barred, its argument claiming untimeliness should be rejected.

---

[2] Moreover, some of the public information that Pfizer relies on did not actually disclose Zoloft's clinical ineffectiveness. *See* RJN Exs. 4, 19-21. The printout from Amazon.com discloses the existence of books that are critical of antidepressants, but does not explain *why* the books are critical of them or that the books talk about Zoloft's inability to outperform a placebo. *See id.* Exs. 23-24.

**B.** **Plumlee's Claims Are Not Preempted Because Pfizer Can Comply with Both State and Federal Law.**

The party contending that a claim is preempted bears the burden of establishing preemption. *United States v. Skinna*, 931 F.2d 530, 533 (9th Cir. 1990). In evaluating a preemption defense, courts first "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (quotation marks and citation omitted). "The presumption against preemption . . . is a strong one" in areas traditionally regulated by the states. *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1117 (N.D. Cal. 2013) (Koh, J.). Here, Plumlee's claims, "rooted in California's consumer-protection laws, fall in an area that is traditionally within the state's police powers to protect its own citizens." *Aguayo v. U.S. Bank*, 653 F.3d 912, 917 (9th Cir. 2011).

There are three kinds of preemption: express preemption, where Congress has expressly preempted state law; field preemption, where state law regulates conduct in a field that Congress wanted the federal government to occupy exclusively; and "conflict" preemption, which preempts state law that actually conflicts with federal law. *See English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79 (1990). Because Congress has enacted no express preemption provision for prescription drugs, Pfizer is forced to argue for conflict preemption under the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. 301, *et seq.* Pfizer's preemption arguments fail.

**1.** ***Buckman* does not preempt Plumlee's claims because she alleges that Pfizer deceived consumers, not the FDA.**

Pfizer's first preemption argument is that Plumlee asserts a preempted "fraud-on-the-FDA" claim. Pfizer is incorrect.

Federal law impliedly preempts "state-law fraud-on-the-FDA claims." *Buckman Co. v. Plaintiffs' Legal Comm*, 531 U.S. 341, 348 (2001); *accord Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1119 (9th Cir. 2013). But state-law claims that "focus on harm that is allegedly perpetrated against consumers rather

than the FDA" are "not fraud-on-the-FDA claims," and are therefore not preempted. *Lefaivre v. KV Pharm. Co.*, 636 F.3d 935, 944 (8th Cir. 2011) (internal quotation marks, alterations, and citation omitted). Because Plumlee's claims are based on harm to consumers rather than to the FDA, they are not preempted.

Pfizer's argument for preemption simply ignores the nature of Plumlee's claims, which do not allege fraud against the FDA. Plumlee alleges not that the FDA was kept in the dark, but that the FDA *knew* that evidence of Zoloft's efficacy was "'not as consistent or robust as one might prefer it to be.'" Compl. ¶ 60 (quoting FDA memorandum); *see also id.* ¶¶ 45-61 (describing FDA's discussions of Zoloft in detail); *id.* ¶¶ 18-19 (explaining the FDA approval process generally and that the FDA's grounds for denying approval are limited). More fundamentally, Plumlee's claim is not that Zoloft should never have been approved. It is that once Zoloft was approved and Pfizer began marketing it in California, Pfizer violated California consumer-protection law by concealing material information about Zoloft's efficacy from consumers. Compl. ¶ 97. Plumlee's claims are not preempted. *See Saavedra v. Eli Lilly & Co.*, No. 12-9366, 2013 WL 6345442, at *7 n.8 (C.D. Cal. Feb. 26, 2013) ("[U]nlike the *Buckman* plaintiffs, Plaintiffs' consumer protection claims plainly rely on 'traditional state' law—the claims do not exist[] 'solely by virtue of the [federal] disclosure requirements.' This is not a case where private plaintiffs are trying to bring suit for fraud against an agency; it is a suit for fraud against Plaintiffs themselves.").

## 2. Under *Wyeth*, Plumlee's challenge to Pfizer's labeling and advertising is not preempted.

According to Pfizer, federal law preempts Plumlee's allegations that Pfizer deceptively labeled and advertised Zoloft. *Wyeth v. Levine*, 555 U.S. 555 (2009), however, defeats Pfizer's argument.

In *Wyeth*, a plaintiff brought a state-law personal injury suit against Wyeth, alleging that Wyeth defectively labeled a prescription drug by failing to warn clinicians against the dangers of administering the drug by the "IV-push" method. The Supreme Court rejected Wyeth's argument that this claim was

preempted by the FDCA. Specifically, it rejected the idea that "because the FDCA requires the FDA to determine that a drug is safe and effective under the conditions set forth in its labeling, the agency must be presumed to have performed a precise balancing of risks and benefits and to have established a specific labeling standard that leaves no room for different state-law judgments." *Id.* at 575. The FDCA's "labeling standards," rather, were "a floor upon which States could build." *Id.* at 577. Because state law claims regarding drug labeling and advertising are "a complementary form of drug regulation," *id.* at 578, Plumlee's state law claims are not preempted.

Pfizer, however, seeks to distinguish *Wyeth* by arguing that—unlike the defendant there—it could not have changed the Zoloft labeling without first getting FDA approval. Since a state-law claim that would require a defendant to get FDA approval is preempted, Pfizer argues that Plumlee's claims are preempted. But Pfizer's fundamental premise is wrong: Pfizer could have changed the label on its own through the "Changes Being Effected" (CBE) process.

The CBE process permits manufacturers to change drug labels *without* FDA approval "[t]o delete false, misleading, or unsupported indications for use or claims for effectiveness." 21 C.F.R. § 314.70(c)(6)(iii)(D). Any changes under the CBE process must be based on "newly acquired information," but as Pfizer concedes, "newly acquired information" includes "new analyses of previously submitted data." MTD at 14; *see* 21 C.F.R. § 314.70(c)(6)(iii); *Wyeth*, 555 U.S. at 569. This provision of the CBE regulation, as *Wyeth* noted, recognizes "that the same data may take on a different meaning in light of subsequent developments." 555 U.S. at 569. Thus, Pfizer could have used the CBE process at any time to reevaluate the efficacy data from its preapproval trials and make corresponding changes to the Zoloft label. Furthermore, Plumlee alleges that, since 1991, when Zoloft received FDA approval, Pfizer has conducted at least a dozen post-approval studies which have failed to establish Zoloft's efficacy. Compl. ¶ 73. But rather than utilizing the available CBE process to bring the label into compliance with California law, Pfizer concealed Zoloft's negative efficacy data and engaged in an

aggressive marketing campaign to promote Zoloft's efficacy. Plumlee's claim based on that concealment is not preempted.

Pfizer also claims that the CBE process is intended for safety, not efficacy, information. MTD at 15. This simply misstates the law. As noted, the CBE regulation allows drug makers to change drug labels without FDA approval "[t]o delete false, misleading, or unsupported indications for use or *claims for effectiveness.*" 21 C.F.R. § 314.70(c)(6)(iii)(D) (emphasis added).  Thus, Pfizer's current position misstates the law and directly contradicts Pfizer's position in the previous round of briefing before this Court: "While the CBE process *can be used to make changes regarding efficacy*, the labeling change must be based on new information." Pfizer's Reply in Supp. of Mot. for J. on Pleadings at 9, ECF No. 92 (emphasis added). Moreover, given that Zoloft has potentially fatal side effects, and that every consumer who considers taking Zoloft is doing so primarily with a hope or expectation of efficacy despite the risk of the side effects, full disclosure of efficacy data is always a matter of safety.

Pfizer has one final unsuccessful argument. It invokes *Wyeth*'s statement that a drug maker can assert a successful preemption defense if it can present "clear evidence that the FDA would not have approved a change to [the] label." 555 U.S. at 571. Courts interpreting the clear evidence requirement have characterized it as "an 'exacting burden' that cannot be met 'simply by showing that the FDA approved the label.'" *Wolfe v. McNeil-PPC, Inc.*, 773 F. Supp. 2d 561, 568 (E.D. Pa. 2011) (quoting *Forst v. Smithkline Beecham Corp.*, 639 F. Supp. 2d 948, 953–54 (E.D. Wis. 2009)).

Pfizer's idea of "clear evidence" that the FDA would reject a label change is simply to state that "the FDA cannot approve drugs that are no more effective than placebo." MTD at 15. This broad, unsupported assertion is inaccurate. The FDA *must* approve a new drug application if there are two clinical trials providing evidence of efficacy. *See* Compl. at 19; 21 U.S.C. § 355(d). As long as the drug manufacturer has produced two positive clinical trials, it does not matter for the purposes of FDA approval how many negative trials there are. *See* Compl. ¶ 53 (quoting FDA advisory committee

member as saying that a drug manufacturer "could just do studies until the cows come home until he gets two of them that are actually statistically significant by chance alone"). As *Wyeth* noted, mere FDA approval does not mean that the agency has "performed a precise balancing of risks and benefits and . . . ha[s] established a specific labeling standard that leaves no room for different state-law judgments." 555 U.S. at 575; *see also* MTD at 11-12. FDA approval is not a conclusive determination that a drug is irrefutably superior to placebo; nor does it, by any means, meet "the stringent standard of proving that there was *clear evidence* the FDA would have rejected the proposed change in the drug's label." *Mason v. SmithKline Beecham Corp.*, 596 F.3d 387, 391 (7th Cir. 2010); *see also Gaeta v. Perrigo Pharm. Co.*, 630 F.3d 1225, 1237 (9th Cir. 2011) ("Nowhere does [defendant] point to any evidence that the FDA was presented with and actually considered . . . the specific warning requested"), *vacated on other grounds sub nom. L. Perrigo Co. v. Gaeta*, 132 S. Ct. 497 (2011). In short, Pfizer has not carried its heavy burden to show that the FDA would not have approved a change to Zoloft's label.

Quite the contrary, in fact: substantial evidence suggests that the FDA would have readily approved a change. For example, Celexa, an SSRI approved to treat depression like Zoloft, contains negative efficacy data on its FDA-approved label. Compl. ¶ 72 n.12. When discussing Celexa's approval, Dr. Leber, the same FDA official who oversaw the approval of Zoloft, stated:

> I am aware that clinical studies often fail to document the efficacy of effective drugs, but I doubt the public, or even the majority of medical community, are aware of this fact. I am persuaded they not only have a right to know, but should know. Moreover, I believe that labeling that selectively describes positive studies and excludes mention of negative ones can be viewed as being potentially "false and misleading."

*Id.* ¶ 72. The FDA's approval of Celexa and Lexapro's labels disclosing negative efficacy data, together with the fact that the same FDA official who oversaw Zoloft's approval later recognized that failure to disclose negative trials on a label can be potentially "false and misleading," plausibly indicates that the FDA would have approved a change in Zoloft's label addressing negative clinical trials.

Because federal law would not have prevented Pfizer from making changes to the Zoloft label, Pfizer necessarily could have also changed any advertising that was based on that label. *Contra* MTD 16. In fact, accurate disclosure of Zoloft's efficacy data in advertising accords completely with federal regulations. *See* 21 C.F.R. § 202.1(e)(1) ("All advertisements for any prescription drug . . . shall present a true statement of information in brief summary relating to . . . effectiveness."). Federal law does not prevent parties from bringing claims of false prescription drug advertising, and "[o]ther legislation, state and federal, remains in effect to protect consumers from false and deceptive prescription drug advertising." *In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, MDL No. 08-1934, 2009 WL 1703285, at *7 n. 4 (C.D. Cal. June 17, 2009).

To argue that federal law *does* preempt Plumlee's allegations about Zoloft's advertising, Pfizer relies on two pre-*Wyeth* cases, *In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, No. 05-1699, 2006 WL 2374742 (N.D. Cal. Aug. 16, 2006), and *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228 (S.D. Fla. 2007). To the extent that they support Pfizer's arguments, these cases are not good law after *Wyeth*. To begin with, the *Bextra* court actually *denied* Pfizer's motion to dismiss the false advertising claims, noting that it could not "conclude that the FDA has actually reviewed all of the submitted advertisements, let alone conclude that the FDA's review means that it has definitively determined that the advertisement was not misleading." 2006 WL 2374742, at *11-12. *Bextra* did hold the plaintiffs' failure-to-warn claims were preempted, but it did so by deferring to a 2006 regulatory preamble, which expressed the view that state tort claims interfered with the FDA's regulatory authority. 2006 WL 2374742, at *5-6. This preamble was considered and rejected by the Supreme Court in *Wyeth*. 555 U.S. at 577 (stating that "the FDA's 2006 preamble does not merit deference" and that "[t]he agency's views on state law are inherently suspect"). *Wyeth* has also abrogated Pfizer's other case, *Prohias*. The *Prohias* court relies on *Bextra* as well as *Pa. Emp. Benefit Trust Fund v. Zeneca, Inc.*, No. 05-075, 2005 WL 2993937 (D. Del. Nov. 8, 2005), which was vacated by the Supreme Court in light of

*Wyeth*, *Pa. Emps. Ben. Trust Fund v. Zeneca Inc.*, 556 U.S. 1101 (2009). In sum, Pfizer's attempts to avoid truthful marketing are based on case law that is no longer valid.

**C.    The FDA Allows Pfizer to Provide Complete and Accurate Information, Depriving It of Its Safe Harbor Defense.**

In California, courts recognize a narrow safe harbor defense, which provides that "[i]f the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999). The defense applies only in specific circumstances wholly absent here. Specifically, to be entitled to a safe harbor defense, the defendant must establish that the legislature *expressly approved* the conduct at issue. *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1346 (S.D. Fla. 2013) ("The safe harbor provisions apply only to conduct approved or specifically authorized by law."); *see also Cel-Tech*, 20 Cal. 4th at 184 ("[T]he Legislature's mere failure to prohibit an activity does not prevent a court from finding it unfair."). To be entitled to a safe harbor, Pfizer must meet its burden of showing that the FDCA *expressly authorized* Pfizer to engage in the conduct that Plumlee sues over: concealing negative efficacy information while touting the efficacy of Zoloft.

Pfizer cannot meet its burden to show express authorization after *Wyeth*, in which the Supreme Court explained that "Congress did not intend FDA oversight to be the exclusive means of ensuring drug safety and effectiveness." 555 U.S. at 575; *see also Mut. Pharm. Co., Inc. v. Bartlett*, 133 S. Ct. 2466, 2479 (2013) (noting that "federal law establishes no safe-harbor for drug companies"). Rather, the FDCA sets the floor, not the ceiling, of drug regulation, and Congress intended state law to offer "an additional, and important, layer of consumer protection that complements FDA regulation." *Wyeth*, 555 U.S. at 579. Because the FDCA allows states to create this more demanding layer of consumer protection, FDA approval cannot expressly authorize that which state consumer protection law

proscribes. To hold otherwise would eviscerate the central holding in *Wyeth* by undermining the ability of states to enact consumer protection law that goes farther than the FDCA.

The majority of the post-*Wyeth* case law agrees. "The fact that the FDA regulates the labeling and marketing of pharmaceuticals is not a fait accompli to the application of the [statutory safe harbor] exemption." *Begley v. Bristol-Myers Squibb Co.*, Nos. 06-6051, 06-6269, 2009 WL 5216967, at *7 (D.N.J. Dec. 30, 2009) (denying motion to dismiss Illinois consumer protection act claim regarding safety and efficacy of Plavix on safe harbor grounds because "mere compliance with applicable law does not necessarily bar Consumer Fraud Act liability") (citation omitted). Similarly, in a case about the marketing and labeling of Zyprexa, the court concluded that the safe harbor provision in South Carolina's consumer protection statute did not bar claims of deceptive labeling and marketing, despite FDA approval of the drug's label. *State v. Eli Lilly & Co.*, No. 2007-CP-42-1855, 2009 WL 6058384, slip op. at 10, 12 (S.C.Com.Pl., Spartanburg Cnty., Sept. 22, 2009) (Decl. of Michael D. Woerner in Supp. of Opp. to Mot. to Dismiss ("Woerner Decl."), Ex. A). Citing *Wyeth*, the court found that because Lilly had the ability to unilaterally amend its label and because the FDA did not explicitly authorize the deceptive practices alleged, FDA approval of the label did not bar the plaintiff's claims. *Id.*; *see also, e.g.*, *Bruton v. Gerber Prods. Co.*, 961 F. Supp. 2d 1062, 1084 (N.D. Cal. 2013) ("In view of the Supreme Court's determination in *Wyeth* that Congress did not intend FDA oversight to be [the] exclusive means of ensuring drug safety and effectiveness, . . . defendants have not persuaded the court that plaintiff's state-law claims obstruct federal regulation . . . .") (quoting *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 373 (N.D. Cal. 2010)) (Koh, J.); *Delarosa v. Boiron, Inc.*, 818 F. Supp. 2d 1177, 1190 n.8 (C.D. Cal. 2011) (concluding that "federal regulations do not explicitly sanction or require the 'business practice complained of'").[3]

---

[3] Pfizer cites *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934 (7th Cir. 2001), a case interpreting the safe harbor provision in Illinois' consumer protection statute. This case, decided before *Wyeth*, held that FDA regulations set the ceiling for drug manufacturer's communications with consumers. *Id.* at 941 ("[T]he state CFA will not impose higher disclosure

One of the few California state courts to consider the safe harbor defense in the context of prescription drugs also rejected the drug manufacturer's arguments. *See Ledwick v. AstraZeneca Pharm., LP*, No. BC 324 518, at 10-11 (Cal. Super. Ct., L.A. Cnty., Sept. 21, 2005) (Woerner Decl., Ex. B). In *Ledwick*, a plaintiff sued a drug manufacturer under California consumer protection law for misrepresenting the efficacy of a prescription drug. The defendant argued that plaintiff's claims were barred by the California safe harbor defense as long as its promotion "is not inconsistent with federally approved labeling and advertising that complies with FDA requirements [it] is immune from attack under California law." *Id.* at 9. The California trial court rejected this argument, explaining that mere consistency with the label was not sufficient to confer immunity from state consumer protection law:

> Even if the advertising were somehow derived from the labeling it would be nonsensical to hold all advertising valid or immunized simply because it does not "conflict" with the labeling.  If all advertising were permissible simply because it does not conflict with the label a manufacturer could say virtually anything, so long as he avoids the label's limited purlieu. (A claim that snake oil cures dandruff does not conflict with the label identifying the oil as coming from a snake.)

*Id. at* 10-11.  *Cf. DePriest v. AstraZeneca Pharm., L.P.*, 351 S.W.3d 168, 176 (Ark. 2009) (distinguishing *Ledwick* and California's safe harbor defense from Arkansas' statutorily prescribed safe harbor exemption).

Pfizer relies on a recent decision from the District of Massachusetts, *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, MDL No. 09–2067, No. 13-11343, 2014 WL 866571 (D. Mass. Mar. 5, 2014). *See* MTD at 9. However, the *Celexa* court all but ignored *Wyeth*, stating that because *Wyeth* dealt with preemption of failure-to-warn claims, its holding did not reach safe harbor defenses under consumer protection statutes. *Celexa*, 2014 WL 866571, at *5. This cursory analysis ignores both the

---

requirements on parties than those that are sufficient to satisfy federal regulations."). The Supreme Court in *Wyeth* unequivocally rejected this understanding of FDA regulation of prescription drugs. For the same reason, Pfizer's reliance on *Prohias*, MTD at 10-11, should also be rejected. *See supra* p. 14 (discussing *Prohias*).

OPPOSITION TO MOTION TO DISMISS
No. 13-CV-0414-LHK                    17

fact that the preemption and safe harbor doctrines are "interconnected"[4] and that the Supreme Court's

decision in *Wyeth* discussed consumer protection broadly. *See Wyeth*, 555 U.S. at 579 ("[T]he FDA long

maintained that state law offers an additional, and important, layer of consumer protection that

complements FDA regulation."). As noted, the *Celexa* decision goes against the majority of district

court decisions post-*Wyeth*. Furthermore, the *Celexa* plaintiffs did not allege any "newly acquired

information," as Plumlee has in this case. *See Celexa*, 2014 WL 866571, at *2 (describing plaintiffs'

allegations). The *Celexa* decision is currently being appealed to the First Circuit. Pls.' Notice of Appeal,

*Celexa*, No. 13-11343 (D. Mass. Mar. 17, 2014), ECF No. 30.

      Finally, *Alvarez v. Chevron Corp.*, 656 F.3d 925 (9th Cir. 2011), on which Pfizer relies heavily,

illustrates the "difference between (1) not making an activity unlawful, and (2) making that activity

lawful" noted in *Cel-Tech*. *Cel-Tech*, 20 Cal. 4th at 183. In *Alvarez*, the plaintiffs claimed that they were

being overcharged for a small amount of residual, lower-octane gasoline when they purchased high-

octane fuel at the pump. According to the plaintiffs, defendant gasoline retailers should institute

different technology at the pumps, charge the appropriate unit price for the residual amount, or, at the

least, disclose the issue. However, in California, gasoline dispensing is regulated by multiple state

agencies. Under state regulations, gas pumps are "commercial weighing and measuring devices" which

must be in accordance with specific technical requirements detailed in "Handbook 44." *Alvarez*, 656

F.3d at 929. A retailer is prohibited from unilaterally changing the design of the pump. Furthermore,

regulations do not "permit a change to the unit price during delivery of [the] product"—i.e., pumping.

*Id.* As the district court explained, "there is no lawful alternative to address the 'residual fuel' issue

---

[4] *Lynch v. Tropicana Prods., Inc.*, No. 11-07382, 2013 WL 2645050, at *6 (D.N.J. June 12, 2013); *see also Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1127 n.5 (N.D. Cal. 2013) (concluding that to the extent a UCL claim was not preempted, there was "no basis for shielding that conduct under a safe harbor"); *Samet v. Procter & Gamble Co.*, No. 12-01891, 2013 WL 3124647, at *10 (N.D. Cal. June 18, 2013) (rejecting safe harbor arguments as "cover[ing] the same ground as" preemption arguments); *Krzykwa v. Campbell Soup Co.*, 946 F. Supp. 2d 1370, 1375 (S.D. Fla. 2013) (because plaintiff's claims were not preempted under Florida's consumer protection law, they were not subject to a safe harbor).

Plaintiffs identify." *Alvarez v. Chevron Corp.*, No. 09-3343, 2009 WL 5552497, at *2 (C.D. Cal. Sept. 30, 2009). Even the plaintiffs' request for disclosures was expressly preempted by the federal Petroleum Marketing Practices Act (PMPA), and accompanying FTC regulations "expressly limit[] label content." *Alvarez*, 656 F.3d at 934 (citing 16 C.F.R. § 306.12(d), which states, "No marks or information other than that called for by this rule may appear on the labels."). The Ninth Circuit affirmed the application of the safe harbor in *Alvarez* not simply because state agencies had approved the defendants' conduct, but because state and federal regulations explicitly prevented the defendants from taking the remedial measures advocated by the plaintiffs. In other words, those regulations set both the floor and the ceiling for defendants' conduct. That is not the case here. *See Wyeth*, 555 U.S. at 577 (FDCA "labeling standards" are "a floor upon which States c[an] build").

**D.    Referral to the FDA under the Primary Jurisdiction Doctrine is Unwarranted.**

Pfizer asserts that the injunctive relief requested by Plumlee would require that Zoloft be removed from the market, and that therefore the FDA should resolve Plumlee's claims. MTD at 17. But requiring Pfizer to update Zoloft's label would in no way necessitate Zoloft's removal from the market. This contention is nothing more than strained speculation to give Pfizer a reason to argue primary jurisdiction, which is clearly unwarranted here.[5]

The primary jurisdiction doctrine is a prudential doctrine that allows a court to stay claims or dismiss them without prejudice "pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). "[O]nly those claims raising issues of first impression or particular complexity are appropriately dismissed or stayed based on primary jurisdiction." *Bruton*, 961 F. Supp. 2d at 1085 (citing *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002)).

---

[5] To be very clear, Plumlee's prayer for relief does not ask for referral to the FDA. *See* Compl. ¶ 164.

Here, Plumlee's consumer protection claims "present neither 'an issue of first impression' nor a 'particularly complicated issue.'" *Saavedra*, 2013 WL 6345442, at \*7. This context "is not a technical area in which the FDA has greater technical expertise than the courts—[as] every day courts decide whether conduct is misleading." *Rikos v. Procter & Gamble Co.*, 782 F. Supp. 2d 522, 530 (S.D. Ohio 2011) (quoting *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1035 (N.D. Cal. 2009)).  A stay or dismissal of Plumlee's claims based on the primary jurisdiction doctrine is not warranted.

## E.   Plumlee Has Suffered an Injury-in-Fact: Economic Harm from Purchasing a Product Based on Misrepresentations.

"Injury-in-fact is not Mount Everest." *Danvers Motor Co., v. Ford Motor Co.*, 432 F.3d 286, 294 (3d Cir. 2005) (Alito, J.). Rather, the injury-in-fact required by Article III is satisfied by "an identifiable trifle" of an injury. *Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 932 (9th Cir. 2008) (quoting *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973)). Plumlee has sufficiently alleged her injury under California's consumer protection statutes: purchasing a product in reliance on communications which misleadingly omitted material information. Nonetheless, Pfizer argues that she has not demonstrated injury and therefore has not satisfied the requirements of Article III standing or stated a claim. MTD at 19-23.

Pfizer contends that "[i]f a product delivers as promised and causes no injury, a purchaser has no claim." MTD at 19. This sweeping assertion has been rejected by the California Supreme Court and the Ninth Circuit. Statutory standing under California's UCL requires that a plaintiff "has suffered injury in fact and has lost money or property as a result" of the allegedly deceptive practice. Cal. Bus. & Prof. Code § 17204. As the California Supreme Court explained, "plaintiffs who can truthfully allege they were deceived by a product's label into spending money to purchase the product, and would not have purchased it otherwise, have 'lost money or property' within the meaning of Proposition 64 and have standing to sue." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 317 (2011). This statutory

requirement overlaps with Article III's injury-in-fact requirement, as "lost money or property—economic injury—is itself a classic form of injury in fact." *Id.* at 323.

A consumer who "relies on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase" has suffered economic harm. *Id.* at 329. It does not matter whether the product functions and does not cause additional harm. "This economic harm—the loss of real dollars from a consumer's pocket—is the same whether or not a court might objectively view the products as functionally equivalent." *Id.* In *Kwikset*, the plaintiffs challenged the accuracy of "Made in U.S.A." representations regarding locksets. While the appellate court reasoned that plaintiffs had not been harmed because they received functioning locks, the California Supreme Court flatly rejected this argument. *Id.* at 331-32. Similarly, the Ninth Circuit, applying *Kwikset*, held that a plaintiff stated an economic injury by purchasing a product falsely advertised as on sale. *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013). It did not matter that the plaintiff "kept the goods that he purchased and they were not defective." *Id.* The plaintiff suffered an economic injury—and an injury in fact—because he purchased a product on the basis of false price information and would not have purchased it otherwise. *Id.*

Likewise, Plumlee's economic injury is that she purchased Zoloft based on Pfizer's misleading material omissions about Zoloft's clinical inefficacy, and that she would not have purchased it had she known the truth. This economic injury is enough to establish standing and to have suffered a cognizable injury under California consumer protection law—as shown by recent case law on the application of California consumer law to products regulated by the FDA. *See Ogden v. Bumble Bee Foods, LLC*, No. 12-01828, 2014 WL 27527, at *9 (N.D. Cal. Jan. 2, 2014) (on summary judgment, ruling that a plaintiff who had produced evidence that, but for Bumble Bee's misrepresentations, she "would either not have purchased Bumble Bee's products or would not have been willing to pay as much for the products as she did," had provided evidence sufficient to create a genuine issue of fact on injury); *Barnes v. Campbell*

*Soup Co.*, No. 12-05185, 2013 WL 5530017, at *3 (N.D. Cal. July 25, 2013) ("to allege an economic injury sufficient to establish standing under the UCL, FAL, and CLRA, 'it is sufficient if a plaintiff alleges that he or she would not have purchased the goods in question absent the misrepresentations at issue.'"); *see also Krueger v. Wyeth, Inc.*, No. 03-2496, 2011 WL 8971449, at *10 (S.D. Cal. Mar. 30, 2011) (explaining that, in the context of misleading omissions and misrepresentations about a prescription drug, "[t]he injury claimed by plaintiff is the monetary loss incurred from purchasing defendant's product.").

Pfizer cites a number of cases that purportedly support its position that Plumlee lacks standing and has not stated a claim. *See* MTD at 21-22. Some of the cases are simply irrelevant because they do not speak to California consumer protection law. *See id.* at 22. Some of the cases on which Pfizer relies wrongly suggest that consumers suffer no economic injury as long as a product is not wholly ineffective—even if they have been materially deceived about that product and have purchased the product in reliance on those deceptions.[6] This is a misstatement of binding law as pronounced by both the California Supreme Court and the Ninth Circuit. *See Kwikset*, 51 Cal. 4th at 329-30; *Hinojos*, 718 F.3d at 1104-05. Plumlee has alleged injury-in-fact and stated a claim under California's consumer protection statutes by alleging that she relied on Pfizer's material misrepresentations and omissions when making a purchase.

**F.     Plumlee Has Standing to Seek Injunctive Relief.**

Pfizer asserts that Plumlee lacks standing to seek injunctive relief because she stopped taking Zoloft.  MTD, at 23-24. Thus, Pfizer claims, she "cannot demonstrate that she is 'realistically

---

[6] In reply, Pfizer may also rely on a recent unpublished opinion in which the Third Circuit affirmed a district court's dismissal of a plaintiff's claims under California consumer protection statutes regarding the marketing of a prescription drug. *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, --- F. App'x ----, No. 13-3463, 2014 WL 1647658 (3d Cir. Apr. 25, 2014). There, however, the Third Circuit found that the plaintiff's allegations were sufficient to establish Article III standing. *Id.* at *1 n.4. The court did conclude that the plaintiff had failed to state a claim, but that was because he had failed to allege which of the drug manufacturer's materials he or his prescriber had seen or relied upon, as well as any specific economic harm, even after the district court had granted leave to amend the complaint. *Id.* at *1. Here, by contrast, Plumlee's Complaint contains such allegations. *See* Compl. ¶¶ 98, 109; *see also id.* ¶ 100.

OPPOSITION TO MOTION TO DISMISS
No. 13-CV-0414-LHK                                    22

threatened' by a repetition of the violations" of the consumer protection acts. *Id.* Pfizer's flawed logic must be rejected in this consumer protection context.

As one court has explained, "[i]f the Court were to construe Article III standing for FAL and UCL claims as narrowly as the Defendant advocates, federal courts would be precluded from enjoining false advertising under California consumer protection laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter ('once bitten, twice shy') and would never have Article III standing." *Henderson v. Gruma Corp.*, No. 10-04173, 2011 WL 1362188, at *7 (C.D. Cal. Apr. 11, 2011). It would mean that a defendant could repeatedly induce consumers to purchase its product based on upon misrepresentations, and then avoid having to correct such misrepresentations because the consumer would never again want to purchase the product as misrepresented. Although district courts within this circuit are split, numerous courts continue to find the *Henderson* court's analysis more persuasive than contrary district court authority. *See, e.g.*, *Lanovaz v. Twinings N. Am., Inc.*, No. 12-02646, 2014 WL 46822, at *10 (N.D. Cal. Jan. 6, 2014) (finding "the reasoning of *Henderson v. Gruma* and the cases following it more convincing"); *Ortega v. Natural Balance Inc.*, No. 13-05942, 2013 WL 6596792, at *5 (C.D. Cal. Dec. 16, 2013) (denying motion to dismiss claim for injunctive relief "for the reasons well-articulated in *Henderson*"); *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012) (citing *Henderson* and stating that "were the Court to accept the suggestion that plaintiffs' mere recognition of the alleged deception operates to defeat standing for an injunction, then injunctive relief would never be available in false advertising cases, a wholly unrealistic result.").

Other courts have looked simply to whether the product or allegedly misleading label has been discontinued to determine eligibility for injunctive relief. *See Pratt v. Whole Foods Market Cal., Inc.*, No. 12–05652, 2014 WL 1324288, at *9 (N.D. Cal. Mar. 31, 2014) (allowing claim for injunctive relief to proceed because product had not been discontinued); *Bronson v. Johnson & Johnson, Inc.*, No. 12-

04184, 2013 WL 1629191, at *1 n.2 (N.D. Cal. Apr. 16, 2013) (finding claims for injunctive relief moot where product had been discontinued); *Ogden*, 2014 WL 27527, at *13 (on motion for summary judgment, rejecting defendant's argument that injunctive relief was inappropriate because defendant was in the process of changing its label, because defendant did not provide definitive evidence of label change); *Astiana v. Ben & Jerry's Homemade, Inc.*, No. 10-4387, 2011 WL 2111796, at *12-13 (N.D. Cal. May 26, 2011) (denying motion to dismiss claims for injunctive relief where court could not determine whether labels had been changed without a more developed factual record). If the product has not been discontinued and the manufacturer has not changed the allegedly misleading labels of its own accord, injunctive relief is not only appropriate but arguably the *most* appropriate relief.

Because Pfizer has presented no evidence that it has taken action to change its misleading label or advertising, Plumlee, "as [a] representative[ ] of a class, should be entitled to pursue injunctive relief on behalf of all consumers in order to protect consumers from Defendant's alleged false advertising." *Henderson*, 2011 WL 1362188, at *8; *see also Janda v. T-Mobile, USA, Inc.*, No. 05-03729, 2008 WL 4847116, at *4 (N.D. Cal. Nov. 7, 2008) (granting leave to amend to cure any standing defects with respect to request for injunctive relief).

**G.      Plumlee Complied with the CLRA Notice Requirement by Amending Her Complaint.**

The CLRA provides that "[t]hirty days or more prior to the commencement of an action for damages pursuant to this title, the consumer shall … [n]otify the person alleged … of the particular alleged violations … [and] [d]emand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation . . . ." Cal. Civ. Code § 1782(a). The CLRA also provides that a plaintiff may bring a CLRA claim for injunctive relief *without* any pre-suit notice. *Id.* § 1782(d). If, after thirty days, the defendant does not take any action to correct the alleged wrongdoing, "the consumer may amend his or her complaint without leave of court to include a request for damages." *Id.*

Plumlee served her original Complaint on Pfizer on February 7, 2013 (ECF No. 5). The

Complaint stated the following:

> Pursuant to Cal. Civ. Code § 1782(d), if Pfizer does not take action to cease its deceptive
> and unlawful marketing practices and amend the current drug label to accurate [sic]
> reflect the efficacy of Zoloft within thirty (30) days of being served with this Complaint,
> Plaintiff will amend this Complaint to seek, in addition to an order enjoining Pfizer from
> continuing its deceptive and unlawful practices, an order awarding, *inter alia*, Plaintiff
> and the California Consumer Class actual damages, restitution, punitive damages,
> attorneys' fees and costs, and for such other relief as set forth below.

ECF No. 1, ¶ 104. This put Pfizer on notice of the requested CLRA relief and gave Pfizer ample

opportunity to remedy its CLRA violations. *See Ang v. Bimbo Bakeries USA, Inc.*, No. 13-01196, 2013

WL 5407039, at *12 (N.D. Cal. Sept. 25, 2013) (noting that a complaint can give notice for the purpose

of Cal. Civ. Code § 1782(a)). In the year that followed, Pfizer did not cease its deceptive or unlawful

marketing practices, and on March 13, 2014, Plumlee filed her First Amended Complaint, which seeks

damages under the CLRA. Compl. ¶¶ 131, 164. Plumlee has complied with the CLRA's pre-suit notice

requirements.

## V.   CONCLUSION

For all of the reasons given above, Pfizer's motion to dismiss should be denied.

DATED this 1st day of May, 2014.

KELLER ROHRBACK L.L.P.

By: /s/ Michael D. Woerner

Michael D. Woerner (*pro hac vice*)
mwoerner@kellerrohrback.com
Gretchen Freeman Cappio (pro hac vice)
gcappio@kellerrohrback.com
Benjamin Gould (SBN: 250630)
bgould@kellerrohrback.com
Alison Gaffney (pro hac vice)
agaffney@kellerrohrback.com
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone (206) 623-1900

Juli E. Farris (CA SBN: 141716 )
Khesraw Karmand (CA SBN: 280272)
1129 State Street, Suite 8
Santa Barbara, California 93101
Telephone: (805) 456-1496

PENDLEY, BAUDIN & COFFIN, L.L.P.
Christopher L. Coffin, Esq. (*pro hac vice*)
ccoffin@pbclawfinn.com
Nicholas R. Rockforte (*pro hac* pending)
nrockforte@pbclawfirm.com
David M. Hundley (*pro hac* pending)
dhundley@pbclawfirm.com
1515 Poydras St., Suite 1400
New Orleans, LA 70112
Telephone: (504) 355-0086

LAW OFFICE OF S. SAMUEL GRIFFIN
S. Samuel Griffin, Esq. (*pro hac vice*)
attyinatl@gmail.com
1130 Piedmont Ave, N.E., # 908
Atlanta, GA 30309
Telephone: (404) 683-1915

*Attorneys for Plaintiff Laura A. Plumlee and
Putative Classes*

1

**<u>CERTIFICATE OF SERVICE</u>**

2

I hereby certify that on May 1, 2014, I electronically filed the foregoing with the Clerk of the Court

3

using CM/ECF system, which shall send notification of such filing to all CM/ECF participants.

4

5

By: <u>s/Michael D. Woerner</u>
Michael D. Woerner

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO DISMISS
No. 13-CV-0414-LHK                27