UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LAURA A. PLUMLEE, an individual, on behalf of herself and all other persons similarly situated, <br><br> Plaintiff, <br> v. <br><br> PFIZER, INC., a New York Corporation, <br><br> Defendant. | Case No.: 13-CV-00414-LHK <br><br> ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE |

Plaintiff Laura Plumlee ("Plaintiff") brings this putative class action against Pfizer, Inc. ("Defendant" or "Pfizer"), alleging that Defendant mislabeled its product Zoloft in violation of California law. Defendant moves to dismiss the First Amended Complaint, ECF No. 130, which Plaintiff opposed, ECF No. 137. Having considered the submissions of the parties and the relevant law, the Court hereby GRANTS Defendant's motion to dismiss the First Amended Complaint with prejudice.

1

## I.  BACKGROUND

### A.  Factual Allegations

Defendant Pfizer, Inc., a New York corporation headquartered in New York, New York, is a "pharmaceutical company involved in the research, development, testing, manufacture, production, distribution, marketing, and sale of numerous pharmaceutical products." First Am. Compl. ("FAC") ¶ 11, ECF No. 116. Pfizer manufactures and sells Zoloft, known generically as sertraline, which the Food and Drug Administration ("FDA") approved in 1991 for the treatment of major depressive disorder.[1] *Id*. ¶ 22. Plaintiff Laura A. Plumlee is a resident of California. *Id*. ¶ 10. On or about March 18, 2005, Plaintiff was prescribed Zoloft to treat her ongoing depression, and she continued to purchase and ingest Zoloft until August 11, 2006, when she switched to a generic formulation of sertraline. *Id*. ¶¶ 98, 99.

Plaintiff alleges that Pfizer has made and continues to make a variety of unlawful, false, and misleading statements, and has concealed and continues to conceal material information, about the efficacy of Zoloft in treating depression. *Id*. ¶¶ 62–99. Plaintiff alleges that Pfizer made such misrepresentations and omissions both in marketing and advertising Zoloft and on its drug labeling, and that Plaintiff purchased Zoloft on the basis of these misrepresentations and omissions. *Id*. ¶¶ 98, 103.

#### 1.  Zoloft

Zoloft, known generically as sertraline, is a "selective serotonin reuptake inhibitor ("SSRI")." *Id*. ¶ 17. SSRIs like Zoloft are antidepressants that counteract what is theorized to be the "primary physiological cause of depression": deficient levels of serotonin in the brain. *Id*. SSRIs inhibit the brain's reuptake of serotonin, increasing otherwise deficient levels of serotonin in the brain, in effect treating depression by "balanc[ing] the brain's chemistry." *Id*. Plaintiff alleges that "scientists have never found evidence to prove the 'balancing brain chemistry' theory." *Id*.

The antidepressant industry is immense, generating revenue of approximately $11 billion per

---

[1] Although originally approved by the FDA for treatment of major depressive disorder, the FDA later approved Zoloft for the treatment of "obsessive-compulsive disorder, panic disorder, post-traumatic stress disorder, premenstrual dysphoric disorder, and social anxiety disorder." FAC ¶ 22.

year. *Id.* ¶ 15. Before its patent expired in 2007, Pfizer's annual sales of Zoloft were in excess of $3 billion. *Id.* ¶ 23. Over 20 million prescriptions of Zoloft or its generic sertraline are filled each year, and Plaintiff estimates Pfizer's total revenue from Zoloft since its launch at over $30 billion. *Id.*

Plaintiff alleges that despite Zoloft's commercial success, the majority of the studies demonstrated "there was no clinically or statistically significant difference between Zoloft and placebo in relieving depression." *Id.* ¶¶ 32–33. According to the FAC, Zoloft's efficacy as an antidepressant is due primarily to the placebo effect. *Id.* ¶ 22. That is, the reason Zoloft may be effective in treating depression is the patient's belief that the drug is effective, rather than the drug's pharmacological effects. *Id.* Plaintiff cites several studies that show antidepressants are particularly susceptible to the placebo effect. *Id.* ¶ 26. Because there is no "physiological test for determining the extent of a person's depression," researchers must rely on a patient's subjective evaluations to evaluate an antidepressant's effectiveness. *Id.*

According to Plaintiff, Pfizer knew before Zoloft was approved by the FDA in 1991 that it "had an efficacy problem." *Id.* ¶ 32. When Pfizer submitted its new drug application ("NDA") to the FDA in 1990, it included five placebo-controlled clinical trials that were designed to test Zoloft's efficacy in treating depression. *Id.* ¶¶ 36, 90. Of the five, two demonstrated a statistically significant effect over placebo, and three showed none. *Id.* ¶ 37.

The FDA Psychopharmacological Drugs Advisory Committee ("PDAC") found Zoloft met the statutory requirements for approval of an NDA: that the drug be safe, and that there be "substantial evidence" of the drug's efficacy. *Id.* ¶¶ 46, 58; *see also* 21 C.F.R. § 314.126. Plaintiff quotes several statements from the PDAC meeting discussing Pfizer's NDA for Zoloft, which suggest that the evidentiary support for Zoloft's efficacy "is not as consistent or robust as one might prefer it to be." FAC ¶ 60; *see generally id.* ¶¶ 53–57. Nevertheless, the PDAC recommended Zoloft for approval, and in 1991 the FDA approved it for the treatment of depression. *Id.* ¶¶ 58, 22.

### 2. Alleged Misrepresentations and Omissions

Plaintiff alleges that, in connection with marketing and labeling Zoloft, Pfizer made various misrepresentations and omissions which Plaintiff contends violate several California consumer protection laws. *Id*. ¶¶ 127, 136–151, 123.

First, Plaintiff alleges that "Zoloft's drug label has never properly disclosed the clinical trial data required to properly understand Zoloft's efficacy" or given consumers or prescribing healthcare professionals "significant clinical trial information . . . to determine . . . if purchasing or prescribing Zoloft is worth the risks." *Id.* ¶ 63. Plaintiff challenges Zoloft's drug label as misleading because it: (1) "suggests that all clinical trials performed on Zoloft supported efficacy when, in fact, there were at least three negative or failed efficacy trials that indicated Zoloft could not outperform placebo," (2) suggests that "numerous clinical trials" support efficacy, and (3) "fails to disclose that the two clinical trials that supposedly demonstrated Zoloft's efficacy were clinically insignificant." *Id*. ¶¶ 64–66, 70. Plaintiff contends that "[b]ecause the drug label contains material omissions of fact, Pfizer prevented consumers and prescribing healthcare professionals from having enough information to make an informed decision about whether to purchase or prescribe Zoloft." *Id*. ¶ 5.

Second, the FAC alleges that "Pfizer has engaged in selective and biased publication of Zoloft's clinical trials with the aim of promoting favorable studies and suppressing negative ones." *Id*. ¶ 74. Plaintiff alleges Pfizer was able to prevent disclosure of unfavorable clinical results by having outwardly unbiased researchers sign non-disclosure agreements, mandating that researchers obtain Pfizer's permission before publishing any clinical data, limiting researchers' access to the raw clinical data, and placing researchers whose trials demonstrated a lack of efficacy on a "do-not-use-in-the-future" list. *Id*. ¶ 75. These practices, according to the FAC, are "just one component of a larger marketing scheme designed to mislead consumers and healthcare professionals about Zoloft's likelihood of efficacy." *Id*. ¶ 74.

Third, Plaintiff alleges that Pfizer engaged in an extensive ghostwriting campaign to improve perceptions of Zoloft's efficacy in the scientific and medical communities. *Id*. ¶ 79. This

4

program involved paying "key opinion leaders" to put their names on articles authored by Pfizer or its agents, articles which would then be published in targeted medical journals. *Id*. According to Plaintiff, the purpose of this program was to "promote efficacy, highlight [the] drug's superiority to a competitor(s), leverage good will with academic investigators, increase media and public perception of the drug and Pfizer, and provide tools for sales force to drive prescriptions based on data." *Id*. ¶ 83 (internal quotation marks omitted).

Fourth, Plaintiff alleges that Pfizer directly paid "key opinion leaders" and distinguished scientists to support Zoloft, while concealing these financial relationships from the larger scientific community. *Id*. ¶ 85.

Finally, the FAC alleges that after Pfizer obtained FDA approval of Zoloft, it embarked on a "massive [marketing] campaign to promote Zoloft as an effective and reliable treatment for depression." *Id*. ¶ 87. Plaintiff alleges that Pfizer encouraged healthcare professionals to prescribe Zoloft by providing them tickets to various theater and sporting events, and paying for ski trips, stays at luxury hotels, and meals at "fancy" restaurants. *Id*. ¶ 88. Plaintiff also alleges that Pfizer sent sales representatives—"typically young attractive people"—to visit healthcare professionals and "brief" them on Zoloft's efficacy, again with the purpose of giving healthcare professionals the impression that Zoloft was a reliable and effective medication for depression. *Id*. ¶ 89. In addition to these "direct-to-prescriber" efforts, Plaintiff alleges that Pfizer created numerous print and video advertisements to promote Zoloft, all of which "gave the false and misleading impression that Zoloft was a tremendously effective drug for the treatment of depression." *Id*. ¶ 90.

### 3. Plaintiff's Experiences

Plaintiff alleges that on or about March 18, 2005, she was prescribed a 50 mg daily dose of Zoloft by her psychiatrist to treat her ongoing depression. *Id.* ¶ 98. As her treatment progressed over the next four years, Plaintiff's dosage was increased to 100, 200, and 400 mg per day. *Id*. Plaintiff continued to purchase and ingest Zoloft until August 11, 2006. *Id*. Between March 18, 2005 and August 11, 2006, Plaintiff spent a total of approximately $171 to purchase Zoloft. *Id*. ¶ 100. Including both payments from Plaintiff and her insurance company, Pfizer received a total

5

Case No.: 13-CV-00414-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

of approximately $3,727 over the same period. *Id*. After August 11, 2006 Plaintiff switched to the generic formulation of Zoloft, sertraline, which she took until June 2008. *Id*. ¶ 99.

Plaintiff alleges that before her doctor prescribed her Zoloft to treat her depression, she saw an advertisement touting Zoloft's efficacy, and that after she had been prescribed Zoloft, she read its drug label. *Id*. ¶ 98. Plaintiff contends that it was on the basis of these misrepresentations and omissions about Zoloft's efficacy that she was induced into purchasing and ingesting Zoloft. *Id*. ¶ 154. Plaintiff further alleges she "did not believe Zoloft was helping her depression," but that she "continued to purchase and ingest Zoloft . . . always hoping that the drug would eventually take root and manage her depression." *Id.* ¶ 103. When Plaintiff "gave up" taking Zoloft in 2008, she "believed that Zoloft simply did not work for her because 'sometimes drugs just do not work for some people.'" *Id.*

Plaintiff did not discover Pfizer's alleged misrepresentations and omissions regarding Zoloft's efficacy until on or about May 22, 2012, when she watched a *60 Minutes* segment regarding the placebo effect and depression. *Id*. ¶ 108. During the entire period in which Plaintiff purchased and ingested Zoloft, she was unaware that "Zoloft's drug label and advertising were deceptive or that they lacked material information about the drug's efficacy." *Id*. ¶ 101. Plaintiff alleges that she "did not see any media, journal articles, press releases, websites, letters, or statements concerning Zoloft and its ability to outperform placebo in treating depression" between March 2008 and May 2012. *Id.* ¶ 104. "Given the risk of the serious and well-documented side effects associated with Zoloft," had Plaintiff known "that the majority of clinical trials related to Zoloft's efficacy had shown it is no better than placebo," she would never have purchased or ingested Zoloft. *Id*. ¶ 109. In other words, "Plaintiff had relied on the sufficiency and accuracy of Pfizer's advertisements and Zoloft's drug label in making her decision to purchase and ingest Zoloft to treat her depression." *Id*.

### B. Procedural History

Plaintiff filed the original Complaint on January 30, 2013. ECF No. 1. Defendant moved for judgment on the pleadings on August 5, 2013. ECF No. 39. The Court granted Defendant's motion

6

for judgment on the pleadings and granted leave to amend on February 21, 2014. ECF No. 105. Plaintiff filed the FAC on March 13, 2014. ECF No. 116. On March 31, 2014, Defendant moved to dismiss the FAC, ECF No. 130 ("MTD"). Plaintiff filed an opposition to the motion to dismiss on May 1, 2014 ("Opp'n"), ECF No. 137, and Defendant replied on May 19, 2014 ("Reply"), ECF No. 92. Defendant accompanied its motion to dismiss with a request that the Court take judicial notice of various publications regarding the placebo effect and antidepressants available to the public before May 2012, as well as several FDA Labeling Change letters and the latest Zoloft label approved by the FDA on February 1, 2013. ECF No. 40. Plaintiff did not oppose this request.[2]

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Such a motion tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering whether the complaint is sufficient, the Court must accept as true all of the factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the Court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). While a complaint need not allege detailed factual allegations, it "must contain

---

[2] The Court GRANTS Defendant's unopposed request for judicial notice as to Exhibits 1–22 and 25-27, and has taken notice of the adjudicative facts contained therein. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (holding a court may take judicial notice of publications to show what was in the public realm at the time); *MGIC Indem. Co. v. Weisman*, 803 F.2d 500, 505 (9th Cir. 1986) (holding a court may take judicial notice of court records); *In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, 590 F. Supp. 2d 1282, 1286 (C.D. Cal. 2008) (taking judicial notice of FDA-approved drug labels); *see also* Fed. R. Evid. 201(d). The Court DENIES Defendant's request for judicial notice as to Exhibits 23 and 24, the "Amazon.com Book Search Results." Unlike the publications, it is not evident to the Court that these search results do not vary by user or change over time based on new inventory. *See Dorner v. Comm. Trade Bureau of Cal.*, No. CIV-F-09-0083 AWI SMS, 2008 WL 1704137, at *4 (E.D. Cal. Apr. 10, 2008) (declining to judicially notice internet search results because "results for an identical search can vary from day to day").

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

**B.    Rule 9(b)**

Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which require that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy the heightened standard under Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks and citation omitted). A plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F. Supp. 1297, 1309 (C.D. Cal. 1996). However, "intent, knowledge, and other conditions of a person's mind" need not be stated with particularity, and "may be alleged generally." Fed. R. Civ. P. 9(b).

**C.    Leave to Amend**

If the court concludes that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule

8

Case No.: 13-CV-00414-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted). Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### III.     DISCUSSION

The FAC alleges that Pfizer violated several California consumer protection statutes by marketing and selling Zoloft as an effective treatment for depression while concealing that the majority of clinical studies show that it is no better than a placebo. FAC ¶¶ 1, 3–5. Specifically, Plaintiff alleges violations of: (1) the Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*; (2) California's Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200, *et seq.*; and (3) California's False Advertising Law ("FAL"), California Business and Professions Code §§ 17500, *et seq. See FAC* ¶¶ 125–31, 133–45, 147–59. Defendant seeks to dismiss Plaintiff's FAC on a number of grounds, including that each of Plaintiff's claims is time-barred, barred by the safe harbor doctrine, preempted by federal law, barred by the doctrine of primary jurisdiction, and that Plaintiff lacks standing to seek injunctive relief. *See* MTD at 1–3. Defendant also contends that because Plaintiff failed to satisfy the CLRA's pre-suit notice requirement, she may not bring a claim for damages under that statute. *Id*. at 3. The Court will not address every one of Defendant's arguments, however, because, as discussed below, the Court finds that each of Plaintiff's claims is time-barred and that despite being granted an opportunity to amend her complaint, Plaintiff has still not met her burden of showing that the statutes of limitations have been tolled by the delayed discovery rule. Below, the Court first describes Plaintiff's causes of action under the CLRA, UCL, and the FAL, and then turns to the question of whether Plaintiff's claims are barred by the relevant statutes of limitations, and whether those statutes have been tolled by the delayed discovery rule.

**A. The CLRA, UCL, and FAL**

The CLRA prohibits "'unfair methods of competition and unfair or deceptive acts or practices' in transactions for the sale or lease of goods to consumers." *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 833 (2006) (citing Cal. Civ. Code § 1770(a)). Under the CLRA, sellers can be liable for "making affirmative misrepresentations as well as for failing to disclose defects in a product." *Baba v. Hewlett–Packard Co.*, No. 09-5946 RS, 2010 WL 2486353, at *3 (N.D. Cal. June 16, 2010). "Conduct that is 'likely to mislead a reasonable consumer' . . . violates the CLRA." *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 680 (2006) (quoting *Nagel v. Twin Labs., Inc.*, 109 Cal. App. 4th 39, 54 (2003)). The statute of limitations for actions under the CLRA is three years. Cal. Civ. Code § 1783.

California's UCL provides a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. Cal. Bus. & Prof. Code § 17200. The UCL's coverage is "sweeping," and its standard for wrongful business conduct "intentionally broad." *In re First Alliance Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006) (citing *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999)). The unlawful prong of the UCL "borrows violations of other laws and treats them as unlawful practices," which the UCL then "makes independently actionable." *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 180 (internal quotation marks and citations omitted). To support her theory of liability under the UCL's unlawful prong, Plaintiff relies upon Defendant's alleged violations of the following California laws: Cal. Civ. Code §§ 1709, *et seq.* (fraudulent deceit); Cal. Civ. Code §§ 1571, *et seq.* (fraud); Cal. U. Com. Code §§ 2313-15 (breach of express and implied warranty); Cal. Bus. & Prof. Code §§ 17500, *et seq.* (FAL); and Cal. Civ. Code §§ 1750, *et seq.* (CLRA). FAC ¶ 136. A business practice violates the unfair prong of the UCL if it is contrary to "established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006). In determining whether a business practice is unfair under this approach, California courts balance the "impact on its alleged victim" against "the reasons, justifications, and

motives of the alleged wrongdoer." *Id.*[3] Finally, to state a cause of action under the fraud prong of the UCL, "a plaintiff need not show that he or others were actually deceived or confused by the conduct or business practice in question." *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1167 (2000). "Instead, it is only necessary to show that members of the public are likely to be deceived." *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647–48 (1996). The statute of limitations for actions under the UCL is four years. Cal. Bus. & Prof. Code § 17208.

California's FAL makes it unlawful for a business to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. Whether an advertisement is "misleading" must be judged by the effect it would have on a reasonable consumer. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). The statute of limitations for actions under the FAL is three years. Cal. Code Civ. Proc. § 338(a).[4]

**B.     Statute of Limitations**

The Court previously concluded that Plaintiff's claims are barred by the relevant statutes of limitations. *See* MJOP Order at 11–13. Plaintiff alleges she suffered an economic injury when she purchased Zoloft based on Pfizer's misleading advertising and labeling of Zoloft. *See id.* Plaintiff last purchased Zoloft or its generic equivalent in June 2008, and the Court found that her claims accrued on that date. MJOP Order at 12–13. Plaintiff initiated this action on January 30, 2013, four years and seven months after her claims accrued. As such, all of the corresponding statutes of limitations have run by at least seven months, and her claims are time barred.

---

[3] The "proper definition of 'unfair' conduct against consumers is 'currently in flux' among California courts," and some appellate opinions have applied a more stringent test, particularly for conduct that threatens an incipient violation of antitrust law. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

[4] Plaintiff's causes of action under the CLRA, the fraud prong of the UCL, and the FAL all sound in fraud and are therefore all subject to the heightened pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure. *See Kearns*, 567 F.3d at 1125 ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL.").

11
Case No.: 13-CV-00414-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

**C.      Delayed Discovery Rule**

The "delayed discovery" rule only benefits plaintiffs who can show that they acted reasonably and diligently in preserving their rights. In granting Defendant's motion for judgment on the pleadings with leave to amend, the Court specifically directed Plaintiff to plead facts "show[ing] her diligence." MJOP Order at 14–15. The Court observed that Plaintiff had failed to allege "that she took *any* steps toward discovery." *Id.* at 15. While Plaintiff's FAC addresses some of the pleading problems the Court identified in its prior order, Plaintiff has once again failed to plead *any* facts showing reasonable diligence. The Court concludes that because Plaintiff's FAC pleads insufficient facts to invoke the delayed discovery rule, despite clear direction in the Court's previous order, Plaintiff's claims under the CLRA, UCL, and FAL are time-barred, and the FAC is dismissed with prejudice.

"In California, the discovery rule postpones accrual of a claim until 'the plaintiff discovers, or has reason to discover, the cause of action.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008) (quoting *Norgart v. Upjohn Co.*, 981 P.2d 79, 88 (Cal. 1999)). "A plaintiff whose complaint shows on its face that [her] claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence. The burden is on the plaintiff to show diligence, and conclusory allegations will not withstand" a motion to dismiss. *E–Fab, Inc. v. Accountants, Inc. Servs.*, 64 Cal. Rptr. 3d 9, 17 (Cal. Ct. App. 2007) (internal quotations and citation omitted). "[P]laintiffs are charged with presumptive knowledge of an injury if they have information of circumstances to put [them] *on inquiry* or if they have *the opportunity to obtain knowledge* from sources open to [their] supervision." *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 920 (Cal. 2005) (internal quotation marks omitted). The delayed discovery rule is available to rebut the presumption and to toll the statute of limitations under the CLRA, UCL, and FAL. *See Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1131 (C.D. Cal. 2010) (delayed

1    discovery rule applies to CLRA and FAL claims); *Aryeh v. Canon Bus. Solutions, Inc.*, 292 P.3d

2    871, 878 (Cal. 2013) (delayed discovery rule applies to UCL claims).[5]

3          Here, Plaintiff does not plead facts satisfying the element of reasonable diligence. The FAC

4    fails to identify any actions Plaintiff took to investigate the alleged wrongful conduct by Pfizer at

5    the time a reasonable person should have suspected wrongdoing. As explained below, while

6    Plaintiff sufficiently pleads the time and manner of her discovery, her failure to adequately plead

7    diligence precludes application of the delayed discovery rule. Regarding the delayed discovery

8    rule, Plaintiff raises four arguments: (1) that there is no affirmative duty to investigate under the

9    delayed discovery rule; (2) that she had no obligation to seek out publicly available information

10   regarding Zoloft's effectiveness; (3) that such information was unavailable at the time; and (4) that

11   her subjective belief excuses her lack of diligence . The Court address each one below, and finds

12   each one unpersuasive.

13         First, Plaintiff's initial argument is incorrect as a matter of law. "In order to employ the

14   discovery rule to delay accrual of a cause of action, a plaintiff must demonstrate that he or she

15   conducted a reasonable investigation of all potential causes of her injury." *Fox*, 110 P.3d at 922.

16   Prior to taking Zoloft, Plaintiff saw an advertisement touting Zoloft's effectiveness, on which she

17   relied when her doctor prescribed Zoloft on March 15, 2005. FAC ¶ 98. After three years, Plaintiff

18   "gave up" taking Zoloft and its generic equivalent in June 2008 because she "did not believe Zoloft

19   was helping her depression." FAC ¶ 103. Thus, her claims accrued in June 2008,[6] and the statutes

---

[5] The Ninth Circuit has held that claims under the UCL begin to run on the date of the defendant's violation and *not* the date of discovery. *See Karl Storz Endoscopy–Am., Inc. v. Surgical Tech., Inc.*, 285 F.3d 848, 857 (9th Cir. 2002). However, the California Supreme Court clarified recently that claims under the UCL are "governed by common law accrual rules," including delayed discovery. *Aryeh*, 292 P.3d at 878. The Ninth Circuit's interpretation of California law is "'binding in the absence of any subsequent indication from the California courts that our interpretation was incorrect,'" *Jones–Hamilton Co. v. Beazer Materials & Servs., Inc.*, 973 F.2d 688, 696 n.4 (9th Cir. 1992) (quoting *Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983)). The *Aryeh* decision is a clear indication that *Karl Storz Endoscopy* incorrectly held that the delayed discovery rule is not available to toll the statute of limitations for claims under the UCL.

[6] Plaintiff alleges she ceased taking Zoloft on or about August 6, 2006, and used the generic equivalent until June 2008. FAC at ¶ 99–100. It is not evident that Defendant was the cause of her economic injury from August 2006 to June 2008, because Plaintiff does not allege that Defendant manufactures or sells the generic equivalent. Even giving Plaintiff the benefit of the doubt that

of limitations barred the last of her claims in June 2012. Plaintiff alleges that on or about May 22, 2012, she happened to see a *60 Minutes* segment regarding the placebo effect and antidepressants. FAC ¶ 108. What is noticeably absent from the FAC is any allegation that Plaintiff took any steps to discover why Zoloft was ineffective in treating her depression between June 2008 and when she saw the *60 Minutes* segment in May 2012. Plaintiff does not allege that between June 2008 and May 2012 she consulted her physician or psychiatrist, or that she looked for any information regarding Zoloft's effectiveness. Plaintiff does allege that between March 2008 and May 2012, she saw no information criticizing Zoloft's efficacy, and that "[u]pon information and belief, no media or information criticizing Zoloft's efficacy existed during this time period to which a reasonably diligent consumer would have been exposed." *Id.* ¶ 104. However, whether a reasonably diligent consumer "would have been exposed" to information regarding Zoloft's efficacy does not address the threshold issue of whether Plaintiff acted diligently to investigate whatever information was available to her when she suffered her injury. Plaintiff was not required to actually discover all the facts underlying her specific legal theories, but once she knew Zoloft was ineffective for her, she could not "wait for [the facts] to find [her] and sit on [her] rights," rather she had to "go find" the available facts. *Norgart*, 981 P.2d at 88–89 (internal quotation marks omitted).

Second, Plaintiff claims that Defendant's alleged misrepresentations and concealment of negative clinical trial data excuse her lack of diligence. *See* Opp'n at 8 (citing *Tavares v. Capital Records, LLC*, No. 12-CV-3059 YGR, 2013 WL 968272 (N.D. Cal. Mar. 12, 2013). However, "[m]isrepresentations are a part of every fraud cause of action; nonetheless, the duty to investigate arises if the circumstances indicate that the defendant's representations may have been false." *Doe v. Roman Catholic Bishop of Sacramento*, 117 Cal. Rptr. 3d 597, 604 (Cal. Ct. App. 2010). Unlike in *Tavares*, where the plaintiffs were unaware of any facts that would have put them on notice of their injuries, Plaintiff had actual notice of Zoloft's ineffectiveness, at least with regards to her own depression as of June 2008, which triggered inquiry notice that Zoloft's claims of effectiveness

---

Defendant was the cause of her injury through June 2008, her claims are barred by the statutes of limitations.

were misleading.[7] *See Tavares*, 2013 WL 2968272, at *3. Having detrimentally relied on Pfizer's alleged misrepresentations regarding Zoloft's effectiveness, Plaintiff had a factual basis to suspect that Zoloft's advertisements and drug label were misleading.[8] Plaintiff is correct that the mere availability of public facts about Zoloft's ineffectiveness is insufficient to trigger a duty to investigate. *See, e.g.*, *Nelson v. Indevus Pharms., Inc.*, 48 Cal. Rptr. 3d 668, 670–73 (Cal. Ct. App. 2006). However, Plaintiff pleads that she knew Zoloft was not working for her, despite the claims of effectiveness Plaintiff had read, seen, and relied on for three years. FAC ¶¶ 98, 108, 154. The combination of these facts, as pled in the FAC, was reason for Plaintiff to suspect that Defendant had done something wrong.[9] Having alleged those facts, Plaintiff bears the burden of showing she was reasonably diligent in investigating the cause of her injuries. *See Fox*, 110 P.3d at 922; *Jolly*, 751 P.2d at 928.

Plaintiff cites *Nelson v. Indevus Pharmaceuticals, Inc.*, 48 Cal. Rptr. 3d at 671, in support of her contention that her failure to investigate does not preclude application of the delayed discovery rule. Opp'n at 6–7. Plaintiff's reliance on *Nelson* fails. The *Nelson* plaintiff's duty to investigate was not triggered because she had no actual, presumptive, or inquiry notice that her injury was related to her use of Redux, a prescription diet drug. *Nelson*, 48 Cal. Rptr. 3d at 675. The plaintiff suffered heart palpitations and fatigue before, during, and after taking Redux. *Id.* These "common and non-specific" symptoms did not start or even intensify when she started taking Redux, "which would normally suggest that they were caused by the drugs." *Id.* The

---

[7] Plaintiff relies on "information and belief" to assert she would not have been able to access information regarding Zoloft's effectiveness even if she had bothered to look. FAC ¶ 104. However, she fails to provide any factual basis for this assertion and Defendant's submissions of numerous articles, excerpts from books, websites, and other publications contradict her allegation. *See* Pfizer Inc.'s Request for Judicial Notice in Support of Motion to Dismiss ("Pfizer's RJN"), Exhs. 1–24, ECF. No. 131.

[8] *Arroyo v. Plosay*, 170 Cal. Rptr. 3d 125 (Cal. Ct. App. 2014), is inapposite. In *Arroyo*, plaintiffs had notice of the defendant's mishandling of the decedent's body, causing facial disfigurement. The *Arroyo* plaintiffs had no reason to suspect the defendant had also prematurely declared decedent dead and placed her in the morgue while still alive. In contrast, Plaintiff should have suspected that Defendant's claims regarding Zoloft's efficacy were misleading since she relied on those claims only to experience Zoloft's ineffectiveness.

plaintiff had no reason to suspect a connection between Redux and her symptoms, and though she sought out medical advice, two doctors failed to diagnose her. *Id.* In light of these facts, the plaintiff was not charged with "constructive suspicion" merely because some members of the public were aware of Redux's side effects. *Id.* In contrast, Plaintiff pleads that she detrimentally relied on Zoloft's advertised effectiveness and was fully aware that Zoloft failed to treat her depression. FAC ¶¶ 98–100, 109. With actual knowledge of Zoloft's advertisements, drug label, and ineffectiveness in treating her depression after three years, Plaintiff had "*reason* at least to suspect a factual basis" for her claims that the Zoloft advertising and label were misleading. *See Nelson*, 48 Cal. Rptr. 3d at 671.

Third, Plaintiff claims that "no media or information criticizing Zoloft's efficacy existed during this time period to which a reasonably diligent consumer would have been exposed." FAC ¶ 104. However, the dozens of exhibits submitted by Defendant, and judicially noticed by the Court, directly contradict Plaintiff's claim. These exhibits clearly show that a reasonably diligent consumer could have discovered information regarding the placebo effect, Zoloft's effectiveness, and unpublished clinical trials. *See, e.g.*, Pfizer's RJN, ECF No. 131, Exh. 1 (2002 USA Today article identifying Zoloft as no more effective than placebo), Exh. 7 (2008 San Jose Mercury News article discussing unpublished negative clinical trials); Exh. 8 (2008 Wall Street Journal article discussing Zoloft, selective publication, the five clinical trials submitted to the FDA, and placebo effect).[10] Moreover, even evidence Plaintiff cites in the FAC directly contradicts her claim. For example, Plaintiff cites a January 2009 article from the New York Review of Books that mentions Zoloft by name for the proposition that "[m]any drugs that are assumed to be effective are probably little better than placebos, but there is no way to know because negative results are hidden."[11] FAC

---

[10] These are just a few of the publications that were available to the public before, during, and immediately after Plaintiff's use of Zoloft. The Court notes that many of these sources are geared towards the lay public, and discuss many of the allegations made in the FAC concerning selective publication, misleading labels, and suppression of negative clinical trial results.

[11] This article discusses drug companies' payments to doctors, the placebo effect, the FDA's allegedly lax standards for approval of antidepressants, bias in clinical trials, and fraudulent marketing. *See* Marcia Angell, *Drug Companies & Doctors: A Story of Corruption*, N.Y. Rev. of Books, (Jan. 15, 2009), *available at http://www.nybooks.com/articles/archives/2009/jan/15/drug-companies-doctorsa-story-of-corruption/*.

¶ 74. Accordingly, the Court rejects Plaintiff's claim. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." (internal citation omitted)).

Plaintiff further claims that a reasonably diligent consumer could not have discovered Zoloft's negative clinical trial data because such information could only be found in scientific journals, for which "[a] subscription to a single journal can cost thousands of dollars." FAC ¶ 107. However, as demonstrated above, lay publications such as the USA Today, Wall Street Journal, and New York Review of Books discussed Zoloft's placebo effect and unpublished negative clinical trial data. Moreover, Pfizer contends that eight of the scientific articles regarding the placebo effect of antidepressants, including Zoloft, that Plaintiff references in the FAC are available free of charge on the Internet. *See* Declaration of Leeron Morad in support of Pfizer Inc.'s Motion to Dismiss First Amended Complaint, ECF No. 132, at ¶ 3. Thus, although Plaintiff can and does plead she was ignorant of any information, she cannot plead that such information was unavailable to a reasonably diligent consumer.

Fourth, Plaintiff alleges the time and manner of her discovery, but that alone is insufficient to rebut the "presumption that she knew of the cause of her injuries when it occurred." *Doe*, 117 Cal. Rptr. 3d at 604. Plaintiff contends she thought Zoloft was only ineffective for her. FAC ¶ 103. But her "[s]ubjective suspicion [w]as not required. If a person becomes aware of facts which would make a reasonably prudent person suspicious, he or she has a duty to investigate further and is charged with knowledge of matters which would have been revealed by such an investigation." *Mangini v. Aerojet-Gen. Corp.*, 281 Cal. Rptr. 827, 843 (Cal. Ct. App. 1991). Plaintiff had a factual basis to suspect her injury, and a corresponding duty to investigate. Had Plaintiff taken any minimal step toward investigating her injury, she would have discovered the abundant publicly available information set forth above. Plaintiff's decision to rely on her own subjective belief and

forego taking any minimal step toward investigating her injury places her beyond the reach of the delayed discovery rule.

Invocation of the discovery rule requires more than simply alleging that discovery was delayed. *See Fox*, 110 P.3d at 921. It protects only a plaintiff who, "despite diligent investigation . . . is blamelessly ignorant of the cause of [her] injuries." *E-Fab*, 64 Cal. Rptr. 3d at 16 (internal quotation marks omitted). Plaintiff has now had two opportunities to plead the delayed discovery rule. The FAC is still missing an essential allegation: that Plaintiff took *any* step whatsoever to investigate her injury at the time it occurred. Plaintiff has failed to adequately plead that a reasonable investigation could not have resulted in the discovery of her claims against Pfizer. To the contrary, the FAC itself and Defendant's submitted Exhibits 1–23 show that the relevant information could have been available to Plaintiff, had she looked. Because Plaintiff also pleads that "[b]etween March 2008 and May 2012" she saw no information concerning Zoloft's efficacy problems, Plaintiff cannot plead a set of facts showing diligence. As such, the Court finds that Plaintiff's claims under the CLRA, UCL, and FAL are time-barred. Plaintiff's assertions in the FAC preclude her from proving that the delayed discovery rule tolled the statutes of limitations. Accordingly, the Court GRANTS Defendant's motion to dismiss. *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).

The Court previously cautioned Plaintiff that failure to cure the deficiencies identified in Defendant's motion for judgment on the pleadings would result in a dismissal with prejudice. MJOP Order at 17. While Plaintiff's amendments addressed some of those deficiencies, Plaintiff's inability to plead any facts showing diligence makes any further amendment futile. *See Leadsinger*, 512 F.3d at 532; *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010). Accordingly, this dismissal is with prejudice.

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss with prejudice. The Clerk shall close the file.

1  **IT IS SO ORDERED.**

2  Dated: August 29, 2014

_____

LUCY H. KOH
United States District Judge

United States District Court

Case No.: 13-CV-00414-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE